# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 2004 Session

## CYNTHIA LEE BRATTON  v.  MICHAEL WAYNE BRATTON

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Hamblen County**
**No. 2000-148     Hon. Thomas R. Frierson, II, Chancellor**

---

**No. E2002-00432-SC-R11-CV - Filed April 30, 2004**

---

We granted permission to appeal in this divorce proceeding to determine whether postnuptial agreements are contrary to public policy and if not, whether the postnuptial agreement entered into by the parties in this case is valid and enforceable. We hold that postnuptial agreements are not contrary to public policy so long as there is consideration for the agreement, it is knowledgeably entered into, and there is no evidence of fraud, coercion or duress. However, the agreement between the parties in this case is invalid because it lacks adequate consideration. We also granted the husband's application for permission to appeal to determine whether the trial court erred in awarding alimony in futuro instead of rehabilitative alimony. We hold that the trial court properly considered all of the relevant statutory factors and that its award of alimony does not amount to an abuse of discretion. Therefore, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and ADOLPHO A. BIRCH, Jr., JJ., joined. JANICE M. HOLDER, J., filed a dissenting opinion.

Douglas R. Beier, Morristown, Tennessee, for the appellant/appellee, Cynthia Lee Bratton.

Sarah Y. Sheppeard, Knoxville, Tennessee, for the appellee/appellant, Michael Wayne Bratton.

# OPINION

## BACKGROUND

The parties, Cynthia Lee Bratton (Ms. Bratton) and Michael Wayne Bratton (Dr. Bratton), were married on June 26, 1982. At the time of the marriage, Dr. Bratton had completed his first year of medical school, and Ms. Bratton was employed as a research technician. Ms. Bratton had a child from a previous marriage. At the time of the trial, the parties had two minor children, ages sixteen and thirteen.

On June 27, 1983, Dr. Bratton handwrote and signed the following letter:

I, Michael W. Bratton, being of sound mind and being married to Cynthia L. Bratton hereby promise never to be the cause of a divorce between us. In the event that I do not fulfill my promise, I will give Cindy 50% of my present belongings and 50% of my net future earnings.

A more formal "property settlement agreement" was signed by both parties on August 26, 1983. That agreement provided in pertinent part:

WHEREAS, the parties are husband and wife and desire to provide for the future division and [dis]tribution of property and support of the Wife in the event of a future divorce; and

WHEREAS, the parties desire that their respective rights and interests in and to all future property to be accumulated be expressly set forth herein and established in accordance with the terms and provisions hereof.

NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES, the mutual benefits accruing to the respective parties and other good and valuable consideration, received or to be received by each of the parties hereto, it is agreed as follows:

1. In the event the Husband is guilty of statutory grounds for divorce under the statutes of the state the parties are domiciled and the Wife institutes divorce proceedings in the state courts of such state, all property jointly owned by the parties, real, personal, or mixed, shall be divided equally between the parties.

2. In the event the Husband is guilty of statutory grounds for divorce under the statutes of the state the parties are domiciled and the Wife institutes divorce proceedings in the state courts of such state, the Husband shall pay to the Wife, one-half (1/2) of all of the Husband's net gross income (after deduction for state and federal income taxes).

The parties' versions as to the events surrounding the execution of the agreement differ substantially. Ms. Bratton testified that prior to their marriage, she and her husband discussed the fact that she would forgo a career as a dentist to stay at home and raise a family if Dr. Bratton would provide one-half of his income to her in the event of a divorce. No written agreement was ever entered into prior to the marriage. One year after the parties married, Ms. Bratton again voiced an interest in dental school to her husband, at which time Dr. Bratton offered to formalize their prior agreement if she would give up the pursuit of a career. Ms. Bratton testified that it was her husband who had the agreement prepared by an attorney and then brought it to her to sign.

Dr. Bratton testified that there had been no discussion of his wife's interest in dental school prior to their marriage or at any time during the marriage. Instead, he testified that one year into their marriage, Ms. Bratton told him that the doctors with whom she worked warned her that he was likely to leave her once he graduated from medical school and that she needed a legally binding agreement to protect herself from that possibility. After arguing about this with his wife, Dr. Bratton handwrote the letter of July 1983, promising not to leave her and promising that if he did, she would get one-half of his property and future earnings. Dr. Bratton testified that it was Ms. Bratton who contacted an attorney to have the agreement drafted and brought it home for him to sign. At first he refused, but then he relented when she threatened to leave him if he did not sign it. Both parties testified that at the time the agreement was signed, they were not having any marital difficulties.

On March 15, 2000, Ms. Bratton filed for divorce. Dr. Bratton filed a motion for partial summary judgment to have the Property Settlement Agreement declared invalid for lack of consideration. The trial court granted the motion in part. The court found that the agreement was severable and that the portion of the agreement relating to the division of property was valid and enforceable, but that the portion regarding the support was invalid for want of consideration. The parties were directed to proceed with mediation, following which a trial was held to determine the value of the property to be divided and to set child support and alimony.

The trial court found that in the year 2000, Dr. Bratton, who was an orthopedic surgeon, had a gross annual income of $551,521.00. The court also found that "[u]pon the parties' marriage, Ms. Bratton chose to forgo her career . . . in order to support Dr. Bratton's medical career, as well as to serve as homemaker and primary caregiver for the parties' children." While Ms. Bratton is licensed as a real estate broker, the court found that "her business attempts have proved financially unsuccessful."

The trial court granted the divorce to Ms. Bratton based on inappropriate marital conduct on the part of Dr. Bratton in the nature of adultery. Ms. Bratton was designated the primary residential parent of the parties' two minor children. Dr. Bratton was directed to pay $3,237.00 per month in child support based upon the Child Support Guidelines, Tennessee Code Annotated section 36-5-101 (2001), and the court's finding that his annual gross income was $551,521.00. The court also directed Dr. Bratton to pay $1000.00 per month per child into an educational trust fund. Marital property and marital debt were divided equally between the parties. The court awarded Ms. Bratton

alimony in futuro in the amount of $10,500.00 per month until her death or remarriage. Both parties appealed.

The Court of Appeals found that there was consideration for both parts of the postnuptial agreement, but that the whole agreement was in violation of public policy. However, the Court of Appeals affirmed the outcome of the lower court, finding that the evidence did not preponderate against the trial court's division of marital property and marital debt. The court also affirmed the award of alimony in futuro to the wife.

Both parties appealed to this Court. Ms. Bratton argues that the agreement entered into by the parties was valid and should be enforced, thereby obligating Dr. Bratton to pay her one-half of his after-tax income. Dr. Bratton argues that the lower court properly found the agreement to be unenforceable as to support, but that the court erred in awarding alimony in futuro instead of rehabilitative alimony.

## ANALYSIS

*Are Postnuptial Agreements Contrary to Public Policy?*

The Court of Appeals found that the postnuptial agreement was void as against public policy because it preempted the trial court from equitably assigning marital property and alimony as provided by statute. While this Court has declared valid agreements entered into after marriage if they are incident to a reconciliation, we have not addressed the issue of postnuptial agreements that are entered into before the onset of marital difficulties.

There are several types of agreements entered into by spouses or potential spouses. Antenuptial agreements, entered into by prospective spouses in contemplation of marriage, have long been favored by public policy whether the agreement provides for the division of property, see Hoyt v. Hoyt, 372 S.W.2d 300, 303 (Tenn. 1963), or spousal support, see Cary v. Cary, 937 S.W.2d 777, 782 (Tenn. 1996). See also Tenn. Code Ann. § 36-3-501 (2001). Courts enforce antenuptial agreements like any other contract provided that they are "entered into freely and knowledgeably, with adequate disclosure, and without undue influence or overreaching." Cary, 937 S.W.2d at 782. Likewise, reconciliation agreements have been found to be favored by public policy and are enforceable in a manner similar to antenuptial agreements. See Hoyt, 372 S.W.2d at 303-04; Minor v. Minor, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993).

The agreement in the case under submission falls into a third category of agreements – postnuptial agreements. While entered into by spouses after marriage, they differ from reconciliation agreements in that they are entered into before marital problems arise. Like both antenuptial and reconciliation agreements, postnuptial agreements seek to determine the rights of each spouse in the other's property, spousal support, and related issues in the event of divorce or death. Black's Law Dictionary 1167 (6th ed. 1990).

-4-

Although postnuptial agreements were void and of no effect under the common law, most states to address the issue have now determined such agreements to be valid.  See, e.g., Tibbs v. Anderson, 580 So. 2d 1337 (Ala. 1991); In re Estate of Harber, 449 P.2d 7 (Ariz. 1969); Lewin v. First Nat'l Bank of Denver (In re Estate of Lewin), 595 P.2d 1055 (Colo. Ct. App. 1979); Casto v. Casto, 508 So. 2d 330 (Fla. 1987); Davis v. Miller, 7 P.3d 1223 (Kan. 2000); Rockwell v. Estate of Rockwell, 180 N.W.2d 498 (Mich. Ct. App. 1970); Stoner v. Stoner, 819 A.2d 529 (Pa. 2003); In re Estate of Gab, 364 N.W.2d 924 (S.D. 1985); Peirce v. Peirce, 994 P.2d 193 (Utah 2000); Button v. Button, 388 N.W.2d 546 (Wis. 1986).  These courts have held that generally, spouses may divide their property presently and prospectively by a postnuptial agreement, even without it being incident to a contemplated separation or divorce, provided that the agreement is free from fraud, coercion or undue influence, that the parties acted with full knowledge of the property involved and their rights therein, and that the settlement was fair and equitable.  See 41 Am. Jur. 2d Husband and Wife § 134 (1995).

The rationale behind the decision of the Court of Appeals holding the agreement to be void as against public policy was that the contract only became operative by resorting to the courts in a divorce action, and yet it preempted the court from equitably assigning marital property or considering the issue of alimony as provided by statute.  However, under this reasoning, any time a postnuptial agreement makes provisions for spousal support or property division in a way tailored to the parties' desires instead of following a statutory formula, the agreement would be invalid as against public policy.  It has long been acceptable for parties to provide for property division or support in antenuptial and reconciliation agreements based solely on their personal wishes, as evidenced by an agreement, without consideration of any of the statutory factors.  Thus to say that a postnuptial agreement is contrary to public policy due to its invasion into the province of the trial court is inconsistent with the State's acceptance of antenuptial and reconciliation agreements.  For these reasons, we adopt the proposition that marital partners may validly contract to divide property or set support in the event of a divorce by postnuptial agreement, even without it being incident to a contemplated separation or divorce.

Generally, postnuptial agreements will be treated in the same manner as antenuptial and reconciliation agreements.  That is to say, they should be interpreted and enforced as any other contract.  All contracts must be supported by adequate consideration, and agreements between spouses or potential spouses are no exception.  As a general rule, consideration for a contract may be either a benefit to the promisor or a detriment to, or an obligation upon, the promisee.  See Brown Oil Co. v. Johnson, 689 S.W.2d 149, 151 (Tenn. 1985).  Marriage itself is sufficient consideration for a prenuptial agreement.  See Spurlock v. Brown, 18 S.W. 868, 871 (Tenn. 1892); Sanders v. Sanders, 288 S.W.2d 473, 477 (Tenn. Ct. App. 1955).  Similarly, reconciliation in the face of an impending separation or divorce may be adequate consideration.  See, e.g., Gilley v. Gilley, 778 S.W.2d 862, 864 (Tenn. Ct. App. 1989). However, with a postnuptial agreement, the marriage itself cannot act as sufficient consideration because past consideration cannot support a current promise.  See S.M. Williamson & Co. v. Ragsdale, 95 S.W.2d 922, 924 (Tenn. 1936).  Therefore, there must be consideration flowing to both parties as part of a postnuptial agreement.

Additionally, part of a postnuptial agreement must be built-in safeguards to protect from fraud, coercion or undue influence due to the confidential relationship between the parties to the contract. Tennessee Code Annotated section 36-3-501 (2001) requires that in order to be enforceable, antenuptial agreements must be entered into freely, knowledgeably, in good faith, and without the exertion of duress or undue influence. This Court has explained the need for such safeguards with respect to antenuptial agreements as follows: "An engagement to marry creates a confidential relation between the contracting parties and an antenuptial contract entered into after the engagement and during its pendency must be attended by the utmost good faith . . . ." Baker v. Baker, 142 S.W.2d 737, 745 (Tenn. Ct. App. 1940).

Because of the confidential relationship which exists between husband and wife, postnuptial agreements are likewise subjected to close scrutiny by the courts to ensure that they are fair and equitable. See, e.g., Peirce v. Peirce, 994 P.2d 193 (Utah 2000); In re Estate of Gab, 364 N.W.2d 924 (S.D. 1985); In re Estate of Harber, 449 P.2d 7 (Ariz. 1969); see also 41 C.J.S. Husband & Wife § 87 (1991) ("Since a husband and wife do not deal at arm's length, a fiduciary duty of the highest degree is imposed in transactions between them."). As explained by the court in Estate of Gab,

> While it is lawful and not against public policy for husband and wife to enter into such contracts, yet they are not dealing with each other as strangers at arm's length. The relationship of husband and wife is one of special confidence and trust, requiring the utmost good faith and frankness in their dealings with each other. . . . Transactions of this character are scrutinized by the courts with great care, to the end that no unjust advantage may be obtained by one over the other by means of any oppression, deception, or fraud. Courts of equity will relieve against any unjust advantage procured by any such means, and less evidence is required in such cases to establish the fraud, oppression, or deception than if the parties had been dealing at arm's length as strangers . . . .

364 N.W.2d at 926 (quoting Keith v. Keith, 156 N.W. 910, 911 (S.D. 1916)).

*Is the Agreement Valid and Enforceable?*

Having established what is necessary for there to be a valid and enforceable postnuptial agreement, we must determine whether the agreement entered into by the parties in this case meets those requirements. We hold that it does not because it was not supported by adequate consideration.

Where the proof is undisputed and where no conflicting inferences may be drawn, the question of whether an act or forbearance constitutes consideration for a contract is a question of law. Applewhite v. Allen, 27 Tenn. (8 Hum.) 697, 700 (Tenn. 1848); Estate of Hordeski v. First Fed. Sav. & Loan Ass'n of Russell County, Ala., 827 S.W.2d 302, 304 (Tenn. Ct. App. 1991). If a contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. See Hamblen County v. City

of Morristown, 656 S.W.2d 331, 335-36 (Tenn. 1983); Petty v. Sloan, 277 S.W.2d 355, 358 (Tenn. 1955). This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). However, where the writing is not plain and unambiguous and is such as to require the aid of parole evidence and the parole evidence is conflicting or may lead to more than one conclusion, the doubtful parts may be submitted to the fact-finder for resolution. Barker v. Freeland, 18 S.W. 60, 61 (Tenn. 1892); Forde v. Fisk Univ., 661 S.W.2d 883, 886 (Tenn. Ct. App. 1983).

The trial court found that the agreement was severable into two parts, and that there was mutual consideration for the portion concerning property division but no consideration for the portion regarding support. An agreement may be either entire or severable according to the intention of the parties. Penske Truck Leasing Co. v. Huddleston, 795 S.W.2d 669, 671 (Tenn. 1990). The intention of the parties is to be determined by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms. Brockett v. Pipkin, 149 S.W.2d 478, 482 (Tenn. Ct. App. 1940). If several things are to be performed under a contract and the consideration is apportioned to each of the items, the contract is ordinarily regarded as severable. Hogan v. Coyne Int'l Enter. Corp., 996 S.W.2d 195, 200 (Tenn. 1998). However, a contract is not severable or devisable when its purpose, terms and nature contemplate that its parts and consideration shall be interdependent and common to each other. 17A C.J.S. Contracts § 331 (1963).

The trial court found that the contract was severable because each of the two paragraphs "appears to be independent from the other so as to form separate contracts. The promises of the parties under each paragraph are not interdependent and do not relate to the same subject matter." We respectfully disagree.

Considering the intent of the parties in forming this agreement, we hold that the agreement is not severable. The purpose of the agreement was to provide support for the wife in the event of a divorce. While one paragraph deals with property and one deals with income, both are triggered by the same event – a divorce following statutory fault by the husband. The provisions were not intended to be performed separately, but rather as part of a single divorce proceeding.

We must now determine whether there was adequate consideration flowing to both parties of the agreement. Consideration exists when a party does something that he or she is under no legal obligation to do or refrains from doing something which he or she has a legal right to do. See Brown Oil Co. v. Johnson, 689 S.W.2d 149, 151 (Tenn. 1985). Consideration may be either a benefit to the promisor or a detriment to or obligation upon the promisee. Johnson v. Cent. Nat. Ins. Co. of Omaha, Neb., 356 S.W.2d 277, 281 (Tenn. 1962); Galleria Assoc., L.P. v. Mogk, 34 S.W.3d 874, 876 (Tenn. Ct. App. 2000). Mutual promises are sufficient consideration. Rodgers v. Southern Newspapers, Inc., 379 S.W.2d 797, 800 (Tenn. 1964).

It is clear from the agreement that there is consideration flowing from the husband to the wife, as the agreement provides that the wife is to receive one-half of the husband's future income as well as one-half of the jointly owned property.  The agreement does not, however, specify what act or forbearance is to be undertaken by the wife as consideration for the contract.  Moreover, the evidence introduced at trial regarding the wife's obligation under the contract was conflicting and equivocal.  The trial court did not make any specific findings of fact regarding the consideration provided by the wife other than to find mutual consideration for the part of the contract dealing with the property.  While the trial court found there to be no adequate consideration for the monetary payments portion of the contract, the court did not make a finding as to what the parties intended the consideration to be.

The trial court found that with regard to the property division there was consideration because "a couples' waiver of statutory rights to each other's estate can constitute sufficient consideration."  While such a mutual waiver of rights in property may constitute consideration, it does not here.  Because the agreement is not severable, we must find consideration for the whole contract.  The Court of Appeals found consideration for the whole contract, stating:

> Both parties testified that wife would do something in exchange's [sic] for the husband's promise regarding his future income.  The wife testified that she would forego her career to stay home and rear the children.  The husband testified that the wife agreed to stay in the marriage in exchange for his signing the Agreement.  This could be a benefit flowing to him.

We disagree with the Court of Appeals and hold that, under either fact scenario, there was not adequate consideration flowing from Ms. Bratton to Dr. Bratton.  Ms. Bratton's promise not to leave her husband is clearly not consideration for the agreement.  Both parties' admitted that they were not having marital difficulties at the time the agreement was signed.  Therefore, this was not a reconciliation agreement where separation or divorce was imminent, making the wife's promise to remain in the marriage a meaningful act.  According to the husband, the wife's promise was more akin to coercion, in that she threatened to leave him if he did not sign the agreement.  Therefore, even if this were to constitute adequate consideration, the agreement would be invalid due to the taint of coercion and duress.[1]

---

[1] The dissent states that under Dr. Bratton's version of the facts, "the consideration Dr. Bratton bargained for and received was the benefit of domestic tranquility.  In addition, Dr. Bratton received Ms. Bratton's promise that she would stay in the marriage."  While life may have been "much better" for Dr. Bratton after he signed the agreement, this "domestic tranquility" does not constitute consideration adequate to support the contract.  Under Dr. Bratton's version of the facts, it does not appear anywhere in the record that the parties were having any disagreements until the idea of a post-nuptial agreement was brought up by the wife.  This was not a situation in which the parties were already arguing about other issues, after which time a post-nuptial agreement was drafted and entered into.  Under the dissent's theory, consideration could be found in many instances which would otherwise amount to or border on coercion.  For example, if spouse A wanted to get spouse B to enter into a post-nuptial agreement that was essentially for the sole benefit of A, A could simply create such a hostile environment at home by badgering B until B signed the agreement.

Ms. Bratton's promise to forgo a career as a dentist likewise does not constitute consideration as it is a vague and illusory promise. While the wife testified that she had a desire to become a dentist and had discussed this desire with her husband, she had never enrolled in dental school, had never even taken the dental school admissions tests, nor had she taken any other steps necessary to the pursuit of a career as a dentist. Furthermore, as the trial court noted, Ms. Bratton made the choice to forego a career in order to stay home and support her husband at the time of the marriage, which was prior to any agreement being signed. By basing the agreement on a promise or decision that the wife had already made when entering into the marriage, Ms. Bratton is essentially trying to use past consideration to support a present contract, which this Court has long held to be inadequate consideration. See, e.g., Gilman v. Kibler, 24 Tenn. (5 Hum.) 19 (1844). Finally, the benefit received by Dr. Bratton as a result of Ms. Bratton foregoing a career as a dentist was arguably that of having his wife home to look after him, the house, and the children. However, shortly after signing the agreement, Ms. Bratton enrolled in nursing school (although she did not complete more than one semester), and later pursued a career as a real estate agent.

For these reasons, we hold that there was no adequate consideration for the agreement between the parties.[2] Therefore, there is no valid postnuptial agreement.

*Award of Alimony In Futuro*

Having determined that the postnuptial agreement is unenforceable, we must determine whether the trial court committed reversible error in awarding alimony in futuro.[3]

The trial court awarded Ms. Bratton alimony in futuro in the amount of $10,500.00 per month until her death or remarriage. Dr. Bratton argues that the trial court erred in its award of alimony because the court looked at the parties' standard of living during the marriage as the primary factor in making the award. Dr. Bratton specifically takes issue with the trial court's reliance on the Court of Appeals' opinion in Robertson v. Robertson, 2000 WL 1211314 (Tenn. Ct. App., Aug. 25, 2000) *appeal granted* (Mar. 12, 2001). Quoting from that Court of Appeals' opinion, the trial court stated that "[i]n marriages of long duration where a spouse is economically disadvantaged vis-a-vis the other spouse, the party's standard of living should be the measuring stick by which and against which a court determines whether or not an individual can be rehabilitated."

---

[2] While we were unable to find adequate consideration to support the post-nuptial agreement in the case under submission, we can envision many scenarios where there would be adequate consideration. For example, there are many cases upholding post-nuptial agreements in which the parties mutually release claims to each other's property in the event of death. See, e.g., In re Estate of Wiseman, 889 S.W.2d 215 (Tenn. Ct. App. 1994); Tibbs v. Anderson, 580 So. 2d 1337 (Ala. 1991). Additionally, there would be adequate consideration where one spouse gives up an existing career to care for the parties' children in exchange for property and support in the event of divorce to protect that spouse from being disadvantaged in re-entering the job market after a potentially long absence.

[3] As previously mentioned, the trial court divided the marital property equally between the parties pursuant to the postnuptial agreement. Because neither party has appealed this division of property, we uphold the trial court's decision on this issue.

-9-

On appeal to this Court, the judgment in Robertson was affirmed with some modification to the award of alimony. We clarified that the marital standard of living is not the sole factor to be considered when determining whether the economically disadvantaged spouse can be rehabilitated, but that it is one of several factors enumerated by the legislature for consideration in awarding alimony. Robertson v. Robertson, 76 S.W.3d 337, 340 (Tenn. 2002). A trial court must consider every relevant factor in Tennessee Code Annotated section 36-5-101(d)(1) (2001) to determine the nature and extent of support. The two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay. See Burlew v. Burlew, 40 S.W.3d 465, 470 (Tenn. 2001).

The legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse. See Crabtree v. Crabtree, 16 S.W.3d 356, 358 (Tenn. 2000). However, trial courts should not refrain from awarding long-term support when appropriate under the enumerated statutory factors. Robertson, 76 S.W.3d at 341-42. "The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." Anderton v. Anderton, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998).

A trial court has wide discretion in determining whether an award of alimony should be rehabilitative or in futuro, as well as wide discretion in the amount of alimony awarded. Appellate review of a trial court's findings of fact is de novo upon the record with a presumption of the correctness of the findings. See Robertson, 76 S.W.3d at 342; Crabtree, 16 S.W.3d at 360.

Considering the factors in the case under submission, we conclude that the trial court's award of alimony in futuro instead of rehabilitative alimony was not an abuse of discretion. Contrary to Dr. Bratton's argument that the trial court relied on the parties' standard of living as the primary factor, a review of the trial court's decision reveals that the trial court considered all of the statutory factors and discussed the fact that the most significant factors to be considered were need and ability to pay. The trial court also discussed rehabilitation and the legislature's expressed preference therefor.

The trial court determined that Ms. Bratton was economically disadvantaged due to the fact that she had chosen to forego a career in order to be the homemaker and primary caretaker for the children. The court also noted that while Ms. Bratton had worked as a realtor, her business attempts "had proven financially unsuccessful." On the other hand, Dr. Bratton was a successful orthopedic surgeon with a yearly income in excess of $500,000.00. Dr. Bratton was found to be at fault for the break up of the marriage, admitting that he had been having an affair with a co-worker for whom he had expended large sums of money during their romance. The trial court also noted that the wife could not be rehabilitated to the standard of living which the parties' had enjoyed during the marriage and concluded that considering "all applicable factors," an award of $10,500.00 would be appropriate.

Because the trial court properly applied the relevant statutory factors, we affirm the trial court's award of alimony.

## CONCLUSION

In summary, we hold that postnuptial agreements are valid so long as there is adequate consideration for the agreement, it is knowledgeably entered into, and there is no evidence of fraud, coercion or duress. However, the postnuptial agreement entered into by the parties did not meet these requirements in that the agreement was not supported by sufficient consideration. While the trial court divided the marital property pursuant to the agreement the parties do not contest that division on appeal, and we therefore uphold the trial court's judgment with respect to the property. Because the agreement was not supported by consideration, the trial court properly determined spousal support based upon the statutory guidelines, and we hold that the court's award was not an abuse of discretion. As such, the judgment of the trial court is affirmed.

Costs of this appeal are assessed one-half to Cynthia Lee Bratton and one-half to Michael Wayne Bratton.

_____
WILLIAM M. BARKER, JUSTICE

-11-