IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 17, 2005 Session

## MARK STEPHEN BARLEW v. ALICE B. BARLEW

**Appeal from the Circuit Court for Hamilton County**
**No. 03D1966      Samuel H. Payne, Judge**

**No. E2004-01654-COA-R3-CV -  FILED APRIL 26, 2005**

The issues presented in this divorce case are whether the trial court erred in awarding alimony *in futuro* rather than rehabilitative alimony; whether the alimony award to the wife was excessive; and whether the trial court erred by refusing to hear evidence regarding the relative fault of the parties. The trial court awarded the wife $1,500 per month in alimony when the wife requested alimony of $1,248 per month and her income and expense statement showed a need of $1,248 per month. We hold that the wife was properly awarded alimony *in futuro,* but we modify the alimony award to $1,248 per month and affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and D. MICHAEL SWINEY, JJ., joined.

Lucy C. Wright, Chattanooga, Tennessee, for the Appellant, Mark Stephen Barlew.

Rebecca Garren Parker, Chattanooga, Tennessee, for the Appellee, Alice B. Barlew.

## OPINION

Alice B. Barlew ("Wife") and Mark Stephen Barlew ("Husband") were married in 1973. Two children were born to the marriage, both of whom had reached the age of majority prior to filing of the divorce petition. On October 13, 2003, Husband filed for divorce, alleging irreconcilable differences between the parties and later amended his complaint alleging that Wife had been guilty of inappropriate marital conduct, more specifically, adultery. Wife answered, admitting adultery but averring that the parties had reconciled and resumed sexual relations following the discovery of the affair.  She also counterclaimed for divorce citing as grounds inappropriate marital conduct by Husband.

At the beginning of the trial on April 19, 2004, the parties announced an agreement as to the division of their marital assets whereby Husband received assets valued at $171,054 and Wife

received assets valued at $170,273. At issue for trial was the nature and amount of spousal support. After hearing each of the parties' testimony and reviewing their sworn statements of income and expenses, the trial court awarded Wife $1,500 per month alimony *in futuro*.

Husband appeals, raising the following issues for our review:
1. Whether the trial court erred in awarding alimony *in futuro* rather than rehabilitative alimony.
2. Whether the trial court's award of alimony to Wife was excessive.
3. Whether the trial court erred by refusing to consider proof of fault on the part of Wife.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

Regarding an award of spousal support, this court has declared on numerous occasions that a trial court has broad discretion in determining the type, amount and duration of alimony, based upon the particular facts of each case. *Wood v. Wood,* No. M2003-00193-COA-R3-CV, 2004 WL 3008875 at *4, 2004 Tenn. App. LEXIS 877 at *12-13 (Tenn. Ct. App. M.S., filed Dec. 28, 2004) and cases cited therein; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn.2004). As an appellate court, we are disinclined to second guess a trial court's alimony decision unless it is not supported by the evidence or is contrary to public policies reflected in the applicable statutes. *Nelson v. Nelson,* 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002).

Under Tenn. Code Ann.§ 36-5-101(d)(1), once a trial court has determined a party to be economically disadvantaged relative to his or her spouse, the court must determine the nature, amount, duration, and manner of payment of an alimony award. *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003). As our Supreme Court has recently stated:

> A trial court must consider every relevant factor in Tennessee Code Annotated section 36-5-101(d)(1) (2001) to determine the nature and extent of support. The two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn.2001).
>
> The legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse. *See Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn.2000). However, trial courts should not refrain from awarding long-term support when appropriate under the enumerated statutory factors. *Robertson,* 76 S.W.3d at 341-42. "The statutory preference for

rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." *Anderton v. Anderton,* 988 S.W.2d 675, 682 (Tenn.Ct.App.1998).

*Bratton v. Bratton,* 136 S.W.3d 595, 604-05 (Tenn.2004).

The statutory factors required to be considered by the trial court are set forth in Tenn. Code Ann. § 36-5-101(d)(1)(E) as follows:

(i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(iii) The duration of the marriage;

(iv) The age and mental condition of each party;

(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

As noted above, the threshold question for a court to consider in determining which type of alimony is appropriate is whether one of the spouses is economically disadvantaged relative to the other. In the present case, the Husband works in sales for Motorola and he testified that his base salary is $84,000. Husband's tax return information shows he earned substantial bonuses in addition to his base salary; his total gross pay for 2003 was $112,148.51, for 2002 was $106,640.28, and for 2001 was $131,234.95. Wife is employed by the Plumbers Local 43 Health and Welfare Fund, and she earns an hourly wage of $14.34. Her income and expense statement shows weekly earnings of $573.60, or $29,827.20 annually. The trial court noted the disparity between Husband's average yearly gross income of $116,674.58 and Wife's yearly gross income of $29,827.20. We believe the evidence supports the trial court's implicit finding that Wife is economically disadvantaged relative to Husband.

The next issue in the alimony analysis is whether the disadvantaged spouse is capable of being "rehabilitated." The Tennessee General Assembly has defined this concept as follows:

> To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(C).

At the time of trial, Wife was 52 years old and in generally good health. Husband was 51 years old and also in generally good health. Wife does not have a college degree. The parties had been married thirty years when Husband filed for divorce. It appears the parties managed their finances well during the marriage and were able to enjoy a reasonably high standard of living. Husband argues on appeal that Wife is capable of taking a second job, in addition to the forty hour per week job she already has, or that she could return to school to further her education, and thus she is able to be rehabilitated. We do not agree.

Regarding obtaining a second job, Wife testified, "I work all day and at my age, I'm just–I've worked for a long time. I just don't think my health would hold up to it." We do not believe the fact that it might be physically possible for Wife to work more than forty hours per week supports a finding that she is able to rehabilitated. It would not be reasonable or equitable to require her to do

-4-

so. Wife testified that she believed it would not be feasible to return to school because "at my age by the time school was paid for or I took the time off from work to go, it really wouldn't be worthwhile."

Taking a realistic look at the economic realities of Wife's situation, we believe the evidence supports the conclusion that she is not a candidate for rehabilitation because, among other reasons, she is likely already at the peak of her earning potential. Even if she were to quit her job and return to school full-time in pursuit of a potentially higher-paying career, she would still face the prospect of trying to find employment in her mid- to late fifties with little significant prior experience. Taking into consideration all of the relevant statutory factors, the evidence does not preponderate against the trial court's decision to award alimony *in futuro* rather than rehabilitative alimony.

We turn now to the issue of whether the trial court's award of $1,500 per month was excessive. Wife's statement of income and expenses shows a monthly deficit of $1,248, which was the amount she requested. Wife's expenses were broken down by category, and Husband does not take issue with the specifically listed expenses, but argues that the $690 per month Wife listed as "other" is excessive. Husband argues in his brief that Wife "could not even begin to explain what this $690.00 expense was for." To the contrary, an examination of the transcript shows that Wife testified that the $690 estimate included, among other things, auto repair and maintenance, a home security service, garbage service, fire protection service, yard maintenance, household maintenance and repair, and gifts. Wife stated that she has incurred, and presumably will continue to incur, expenses involved in setting up a new household when she moved out of the marital residence several months after Husband filed for divorce. We find the $690 "other" expense is supported by the evidence and not unreasonably inflated.

However, the trial court did not provide an explanation as to why it awarded Wife more alimony than she requested. While it is within the wide discretion of a trial court to award a party more alimony than he or she has requested, *see Miller v. Miller,* No. M1999-00226-COA-R3-CV, 2000 WL 546391 at *3, 2000 Tenn. App. LEXIS 278 at *8 (Tenn. Ct. App. W.S., filed May 5, 2000) (stating "[j]ust as the trial court would have been free to award less alimony than requested, the court is also free to award more"), we believe that in this case, Wife demonstrated a need of $1,248 per month, which Husband has the ability to pay. Accordingly, the award of alimony to Wife is modified to $1,248 per month, retroactive to the date of final judgment.

Finally, we address Husband's argument that the trial court erred in refusing to hear evidence of Wife's fault in the divorce. We respectfully disagree. The relevant portion of the transcript provides the following discourse between parties' counsel and the trial court:

> Q: [by Husband's counsel] Okay. Now, why did you file for this divorce?
> A: [Husband] Two years ago –
> THE COURT: I don't really have to hear any grounds unless you-all –

MS. WRIGHT [Husband's counsel]: Well, Your Honor, I'm not really ready to stipulate grounds due to the fact that there is an alimony claim out there.

THE COURT: It doesn't matter.

MS. WRIGHT: If there's fault out there, that can bear decision on your alimony [sic].

MS. PARKER [Wife's counsel]: It was my understanding that we were going to stipulate grounds.

THE COURT: It doesn't matter. It has to really be something egregious. If you'll look at the case, that's very – all it says is the Judge may attribute that. I've never done it. If somebody is really mean or something, that's a different matter, but it's just where they unfortunately after they just can't live together, I don't punish him for that; don't intend to. I'm not going to punish her either.

MS. WRIGHT: Okay. *I'm not going to belabor it. I just would like for him, for the record, just state why he filed for divorce since he is the plaintiff in this case. We're not going to belabor it.* We're not going to go into it – [Emphasis added]

Tenn. Code Ann. § 36-5-101(d)(1)(E)(xi) provides that in making an alimony determination, the trial court shall consider "[t]he relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so." Husband's counsel said that she wanted him to state why he filed for divorce. This information was already in the record, contained in his amended complaint, where he alleged adultery as a ground for divorce. In her answer, Wife admitted to committing adultery and alleged condonation as a defense. Thus, the trial court had before it the information Husband's counsel was trying to elicit. The statement "we're not going to belabor it" might well have been reasonably construed by the trial court as a disinclination to press the issue further or to object to its decision regarding relative fault. Husband did not request to make an offer of proof regarding his allegations of fault. We find no error on the part of the trial court in exercising its discretion under Tenn. Code Ann. § 36-5-101(d)(1)(E)(xi).

For the aforementioned reasons, the judgment of the trial court is modified so as to reduce the alimony award to Wife to the amount of $1,248 per month, retroactive to the date of entry of final judgment. Recognizing that this modification results in Husband having overpaid alimony in the amount of $252 per month since the final judgment, Husband is entitled to a credit in his monthly alimony payment in the amount that he overpaid alimony each month since the entry of the decree until such time as he has recouped the overpayment. In other words, Husband shall pay alimony in the amount of $996 per month until the overpayment has been recouped, and beginning at that time, Husband shall pay monthly alimony in the amount of $1,248. The judgment of the trial court is affirmed in all other respects. Costs on appeal are assessed to the Appellant, Mark Stephen Barlew, and his surety, for which execution may issue, if necessary.

_____

SHARON G. LEE, JUDGE