IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 8, 2005 Session

## DAVID A. BROOKS v. CATHERINE D. BROOKS

**Appeal from the Circuit Court for Davidson County**
**No. 02D-1221     Muriel Robinson, Judge**

---

**No. M2003-03109-COA-R3-CV - Filed July 6, 2005**

---

Husband appeals *in futuro* alimony awarded Wife at the end of a thirty-one (31) year marriage. Because the evidence does not preponderate against the trial court's findings and the trial court acted within its discretion in applying relevant legal principles, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Larry Hayes, Jr., Nashville, Tennessee, for the appellant, David A. Brooks.

Helen Sfikas Rogers, Robin K. Barry, Nashville, Tennessee, for the appellee, Catherine D. Brooks.

### OPINION

Husband filed for divorce after thirty-one (31) years of marriage, and Wife counterclaimed seeking divorce on grounds of inappropriate marital conduct. The trial court conducted a bench trial and awarded divorce to Wife finding she had the lesser degree of fault. The Final Decree of Divorce was entered October 1, 2003. The trial court divided the marital debt and assets equitably and awarded Wife alimony *in futuro* of $1,250 per month. The only issues on appeal are the Husband's objection to the nature and amount of alimony and Wife's claim she is entitled to attorneys' fees in excess of the amount awarded by the trial court.

### I. SPOUSAL SUPPORT

Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary

to public policies reflected in applicable statutes.  *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  Our role is to determine whether the award reflects a proper application of the relevant legal principles and that it is not clearly unreasonable.  *Id*. at 733  When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them.  Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn.2000).

Pursuant to Tenn. Code Ann. § 36-5-101(a)(1)(A), courts have discretion to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties. . . ."  There are no hard and fast rules for spousal support decisions, such determinations require a careful balancing of the relevant factors, and the determinations hinge on the unique facts of each case. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).  In determining whether to award support and the nature, amount and length of such support, the court is to consider all relevant factors, including those enumerated in Tenn. Code Ann. § 36-5-101(d)(1).[1]  *Id*.

Among the factors to be considered by the courts in making spousal support decisions, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.  *Bratton*, 136 S.W.3d at 604; *Robertson*, 76 S.W.3d at 342; *Bogan*, 60 S.W.3d at 730.  The statutory factors to be considered include the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each

---

[1]Such factors are:

(i) The relative earning capacity, obligations, needs and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
(ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(iii) The duration of the marriage;
(iv) The age and mental condition of each party;
(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(vii) The separate assets of each party, both real and personal, tangible and intangible;
(viii) The provisions made with regard to the marital property as defined in §§ 36-4-121;
(ix) The standard of living of the parties established during the marriage;
(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(E).

party; the ability and opportunity and necessity of each party to secure such education and training in order to improve such party's earning capacity to a reasonable level; and the assets of each party, whether they be separate assets or marital property awarded in the divorce. Tenn. Code Ann. § 36-5-101(d)(1)(E).

The record clearly reflects that the Wife is economically disadvantaged, the first requirement for an award of alimony. Tenn. Code Ann. § 36-5-101. Husband was 54 and Wife was 53 at the time of the divorce proceedings. The couple had two (2) children, both of whom are over eighteen (18). Wife has a college degree in education but has not taught school since 1976. During the marriage, the couple decided that Wife would care for the children and, as a general rule, not work outside the home. At the time of the trial, Wife had been working for one (1) year as an office worker at Thirteen Dollars ($13.00) per hour totaling approximately Twenty-Seven Thousand Dollars ($27,000) per year. Her net income is Eighteen Thousand Nine Hundred Twelve Dollars ($18,912) per year. Originally, Wife had not been successful in finding a job but was able to find this employment through a referral from her attorney. During the marriage, Wife received from Husband Four Thousand Nine Hundred Dollars ($4,900) per month for living expenses to run their household.

The record reflects Husband started his own business in the computer industry around 1994, after losing a job he had held for approximately twenty (20) years. Wife assisted Husband in the development and conduct of this business. By 2002, Husband's annual net income reached Fifty-Two Thousand Dollars ($52,000), and he anticipated a net income of Fifty-Eight Thousand Dollars ($58,000) in 2003. Since Husband operated his own business, he has discretion regarding the amount of his net income.

It is not likely Wife's income will rise significantly through a promotion or change of careers. She has not taught school in almost thirty (30) years. The evidence clearly supports the trial court's finding that Husband has the greater ability to earn income.

Husband asserts that alimony *in futuro* is not appropriate. It is accurate that where economic disadvantage exists, the legislature has expressed a preference for rehabilitative alimony over long-term, open-ended alimony *in futuro*. Tenn. Code Ann. § 36-5-101(d)(1)(C); *Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 470. The purpose of an award of rehabilitative alimony is to encourage divorced spouses to become self-sufficient. *Robertson,* 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 471, *Crabtree*, 16 S.W.3d at 360. A grant of "rehabilitative, temporary support and maintenance" where the spouse is economically disadvantaged, Tenn. Code Ann. § 36-5-101(d)(1)(C), may assist the disadvantaged spouse in obtaining further education or training or may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment. *Robertson*, 76 S.W.3d at 340-41.

However, rehabilitative support is only appropriate where rehabilitation of the disadvantaged spouse is feasible. Tenn. Code Ann. § 36-5-101(d)(1)(c). In determining whether a disadvantaged

spouse can be rehabilitated with short-term support, the court is to consider "every relevant factor." *Bratton*, 136 S.W.3d at 604; *Robertson*, 76 S.W.3d at 340. The legislature has recently clarified the standard to be used to determine if a spouse can be rehabilitated in certain circumstances.[2] Tenn. Code Ann. § 36-5-101(d)(1)(A) through (C) now provides as follows:

> (d)(1)(A) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.
>
> (B) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.
>
> (C) It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties. Where there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection (d), the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). An award of periodic alimony may be made either in addition to a rehabilitation award, where a spouse may be partially rehabilitated as defined in this subdivision (d)(1)(C), or instead of a

---

[2] These amendments became effective in June of 2003, and a corrected bill was signed in August, both before the trial of this matter in September and entry of the order in October.

rehabilitation award, where rehabilitation is not feasible. When appropriate, the court may also award transitional alimony as provided in subdivision (d)(1)(D).

Where rehabilitation as defined by the legislature is not possible, the courts should not refrain from awarding long-term support when that support is appropriate under the statutory factors. *Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 341-42. The statutory preference for rehabilitative support does not entirely displace other forms of support. *Bratton*, 136 S.W.3d at 605; *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). The purpose of alimony *in futuro* is to provide financial support to a spouse who cannot be rehabilitated. *Burlew*, 40 S.W.3d at 470-71.

Although the trial court did not make a specific finding that economic rehabilitation of Wife is not feasible, the facts support such a finding. Based upon her earnings and her stated expenses, Wife was not self-sufficient at the time of the divorce. Wife's statement showed a difference of Two Thousand Three Hundred Dollars ($2,300) between her net income and her expenses. There is no evidence in the record to indicate that rehabilitative alimony for a short period of time would enable Wife to increase her earning capacity significantly enough to become economically self-sufficient. This is especially true using the test of pre-divorce standard of living or post-divorce standard available to the other spouse. That standard is applicable here because Wife suffered economic detriment, pursuant to the parties' agreement, for the benefit of this thirty-one year marriage. Therefore, we conclude that rehabilitative alimony is not required and that the award of alimony *in futuro* was appropriate.

Husband also asserts the amount of alimony is excessive since Wife could apply liquid assets she was awarded to pay down her debt and pay off the mortgage on a modest home she inherited from her mother. According to Husband, if Wife took these steps then her income would be sufficient to cover most of her expenses thereby necessitating a reduction in the alimony awarded. We do not agree that Wife is obligated to deplete her assets in order to reduce living expenses under the facts of this case. Having fully reviewed the record, we conclude that the evidence does not preponderate against the trial court's determination of Wife's need and Husband's ability to pay.

## II. ATTORNEY'S FEES

Likewise, we find the amount of attorney's fees awarded Wife to be within the trial court's discretion and decline to increase the award.

The trial court awarded Wife attorney's fees of Five Thousand Dollars ($5,000). The record reflects that the total amount of attorney's fees incurred by Wife is approximately Twenty-Three Thousand Dollars ($23,000). Since attorney's fees are considered spousal support or alimony, an award of fees is subject to the same factors discussed above as in the award of any other type of alimony. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Our Supreme Court had made clear that "[t]he allowance of attorney's fees is largely in the discretion of the trial court and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron*

*v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citations omitted). We find the trial court acted within its discretion in the amount of attorney's fees awarded Wife.

## CONCLUSION

We affirm the trial court's award of alimony and attorney's fees. Costs of this appeal are taxed to the appellant, David A. Brooks.

_____
PATRICIA J. COTTRELL, JUDGE