IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2013 Session

**JEFFREY PAUL BENGS v. AMY DAWN BENGS**

**Appeal from the Chancery Court for Rutherford County**
**No. 11CV43     Robert E. Corlew, III, Chancellor**

_____

**No. M2012-01203-COA-R3-CV - Filed April 23, 2013**

_____

Husband and wife entered into a post-nuptial agreement detailing the division of their marital estate. Upon Husband's subsequent filing of a complaint for divorce, wife moved for a declaratory judgment that the post-nuptial agreement was valid and enforceable. Husband appeals the trial court's holding that the agreement is enforceable and implementing its provisions. We affirm, holding the post-nuptial agreement is sufficiently definite to be enforced and that the agreement is fair and equitable.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

Daryl Miller South and John Carson Taylor, Murfreesboro, Tennessee, for the Appellant, Jeffrey Paul Bengs.

Robert Scott Stevens, Smyrna, Tennessee, for the Appellee, Amy Dawn Bengs.

**OPINION**

Jeffrey Bengs ("Husband") and Amy Bengs ("Wife") were married in 1993; on February 19, 2010, they entered into an agreement detailing a final disposition of their marital property (the "post-nuptial agreement"). Husband and Wife separated on February 26, 2010 and on January 12, 2011, Husband filed a Complaint for Divorce; Wife filed a counter-complaint on January 21. On October 14, 2011, Wife filed a Motion for Declaratory Judgment, asserting that a dispute had arisen as to two provisions in the post-nuptial agreement and requesting the court to declare the post-nuptial agreement valid and enforceable.

On January 18, 2012, the trial court issued a Memorandum Opinion holding that the post-nuptial agreement was sufficiently definite to be enforceable and was supported by adequate consideration. In a separate order, the trial court implemented the provisions of the agreement, divesting Husband of his interest in the property and awarding the same to Wife, and granting Husband a lien on the real estate for one-half of the proceeds of sale. On May 3 the trial court issued a Final Decree of Divorce.

Husband appeals, raising the following issues:

1. Whether the Chancery Court erred in finding that the post-nuptial agreement which failed to establish a price term for the potential sale of the marital residence was sufficiently definite, and thus, enforceable?
2. Whether the Chancery Court erred in finding that the post-nuptial agreement which failed to establish a term of duration for which Appellee/wife could live in and/or retain the marital residence prior to its potential sale was sufficiently definite, and, thus, enforceable?
3. Whether the Chancery Court erred in finding that the post-nuptial agreement which granted Appellee/wife sole, exclusive discretion over the possession and/or sale of the marital residence was sufficiently fair and equitable, and, thus, enforceable?

## DISCUSSION

Post-nuptial agreements are to be interpreted and enforced in the same manner as any other contract. *Bratton v. Bratton*, 136 S.W.3d 595, 601 (Tenn. 2004). Where the facts are not in dispute and the language of the contract is clear and unambiguous, our interpretation of the contract is a question of law. *Id*. We review questions of law *de novo*. *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005). Our Supreme Court addressed the requirements of a valid contract in *Doe v. HCA Health Servs. of Tenn., Inc.*:

A contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced. Indefiniteness regarding an essential element of a contract may prevent the creation of an enforceable contract. A contract must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.

46 S.W.3d 191, 196 (Tenn. 2001) (internal quotations and citations omitted).

The dispute which leads to this appeal relates to the following provision:[1]

> That in the event that one or both of the parties file for divorce, the following shall be a final disposition of the parties' joint property. That the parties own the real property located at 5007 Chivalry Court, Smyrna, Tennessee, 37167 which served as the marital residence. Said property is titled in joint names and is free and clear from any and all liens. Said property shall be awarded to Amy Dawn Bengs. Amy Dawn Bengs may continue to reside at said property for so long as she desires but in the event that she sells said property, Amy Dawn Bengs shall pay to Jeff Paul Bengs one-half (½) of the equity in said property less realtor fees, closing costs and moving expenses. The parties acknowledge that the tax assessor value for the property for the 2009 tax year was one thousand fifty two thousand [sic] dollars and no/100 ($152,000.00).

Husband first contends that the agreement is unenforceable due to lack of definiteness because it "contains no price term, no price range and no document, transaction method or the like necessary to determine the sale price for the martial residence at issue." He relies on *Tetra Tech, Inc. v. Performa Entertainment Real Estate, Inc.* for the proposition that a contract "may not be enforceable where an essential element, such a price or compensation terms, is determined to be indefinite." *Tetra Tech, Inc.*, No. W2007-02244-COA-R3-CV, 2008 WL 4457061 (Tenn. Ct. App. Oct. 3, 2008). We do not find *Tetra Tech* to be dispositive of the issue before us.

*Tetra Tech* involved a suit to recover for professional services rendered by an engineering firm for the design of several structures as part of an improvement project on Beale Street in Memphis. The plaintiff sought to enforce a professional services agreement which provided that defendant, a real estate company that managed properties involved in the project, would pay a lump sum of $17,000 for plaintiff's services. An attachment to the agreement, known as Attachment B, reiterated the $17,000 lump sum fee and also memorialized a verbal agreement that the defendant would "pay a minimum of [ten percent] of the construction costs upon receipt of invoice and [had] committed to securing the funding to pay the remainder of the total fee." *Tetra Tech*, 2008 WL 4457061 at *1. When the agreement was received by defendant, its president signed and returned the first page of the agreement. The defendant later contended that it also returned a version of Attachment B which it had modified; its president testified that the effect of the modification was to agree to pay the plaintiff $3,500 and to assist the plaintiff in receiving the balance of what it was owed. When the plaintiff sued to recover the $17,000 or, alternatively, in quantum meruit, the trial court determined that the modified Attachment B was the contract between the

---

[1] The other dispute related to Husband's responsibility for payment of legal fees.

parties and that the defendant had performed its responsibilities by paying the plaintiff $3,500. On appeal, this court reversed, holding that there was nothing in the record to show that the plaintiff agreed to forego the balance of the $17,000 fee if the defendant could not secure payment from other sources; the court concluded that, because the record did not demonstrate mutual assent to an indefinite contract price, it was "unenforceable for indefiniteness and lack of mutual assent." *Id*. at *6.

Unlike the conflicting provisions in the agreements at issue in *Tetra Tech*, the post-nuptial agreement before us is clear: the parties intended that Wife be awarded the house in the event of a divorce and that, *if* she later sold the property, Husband would receive one-half of the equity. Husband misconstrues the post-nuptial agreement when he contends that it is unenforceable because it "contains no price term, no price range and no document, transaction method or the like necessary to determine the sale price for the martial residence at issue"; the post-nuptial agreement is not an agreement to sell the property but, rather, is an agreement relative to the ownership of the property after the divorce and the division of the proceeds of sale in the event the property is sold. It is not necessary that a sale price or mechanism to determine a sale price be an element of the agreement in order to enforce the parties' rights and obligations under the agreement.

Husband next contends that the post-nuptial agreement "fails for lack of definiteness because of its unspecified and potentially perpetual duration." We understand Husband's argument to be that, because Wife is not required to sell the property within a certain length of time, the contract is indefinite and unenforceable. We do not agree.

In addressing this issue we are mindful that this agreement was entered into in an effort to resolve–and bring certainty to–the inevitable division of marital assets in the event of divorce. In addition to the marital residence, the agreement contains provisions regarding how marital funds are to be handled until the divorce and allowing Husband to withdraw $26,500 from a joint savings account to purchase a condominium which would be his sole property in the event of a divorce. There is nothing in the agreement that indicates that the parties contemplated anything other than that the agreement would be fully implemented when and if a divorce action were filed, including the transfer of Husband's interest in the marital residence to Wife.[2] The agreement does not require Wife to sell the residence and we do not imply such a requirement; consequently, the lack of a specific time for her to sell the residence does not render the post-nuptial agreement indefinite. *See APCO Amusement Co., Inc. v. Wilkins Family Rests. of Am., Inc.*, 673 S.W.2d 523, 528. (Tenn. Ct. App. 1984) (holding that a letter of intent relative to a lease of space in a restaurant building was

---

[2] Wife's motion for declaratory judgment alleges that the parties "have substantially performed most of the Contract's terms."

enforceable notwithstanding the fact that the letter of intent did not include the duration; we held that, under the facts of that case, a provision relative to the duration of the contract was not essential to the formation of the contract).

Husband lastly contends that the contract is unfair and inequitable and, thereby, unenforceable because Wife has sole discretion in determining how long she resides at the residence and in determining the sale price.

We have already determined that a sale price and a requirement that Wife sell the residence within a specified period of time are not required to make the agreement enforceable; for the same reasons, we hold the agreement is not unfair or inequitable. In addition, we take note of Section III of the agreement which states:

> Jeff Paul Bengs declares he fully understands the terms and provision of this Agreement; that he has been fully informed of his legal rights and liabilities; that he believes that the provisions of this Agreement are fair, just and reasonable; and that he signed this agreement freely and voluntarily.

The record shows that Husband's prior counsel prepared the post-nuptial agreement; there is no allegation that any information pertaining to marital assets or otherwise relevant the agreement was withheld or that Husband entered into the agreement under anything other than his own free will; both parties are provided for adequately.[3] The contention that the agreement is unfair and inequitable is not supported by the record.

## CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court declaring the post-nuptial agreement enforceable and implementing its provisions.

_____
RICHARD H. DINKINS, JUDGE

---

[3] The facts in this case are markedly different from those in *Maloy v. Maloy*, No. M2006-02463-COA-R3-CV, 2008 WL 276018 (Tenn. Ct. App. Jan. 31, 2008), relied upon by Husband for the proposition that an agreement is "neither fair nor equitable when it provides amply for one party and decidedly less for another." In *Maloy* this court affirmed the trial court's finding that the wife had signed a post-nuptial agreement under duress and its resulting refusal to enforce the agreement; also significant to our ruling was the holding that the agreement "provide[d] amply for Husband, with decidedly less for Wife," that the evidence showed that the wife did not have legal advice or full knowledge of the marital estate, and that the husband failed to disclose key information.