IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2005 Session

## BRUCE R. GOODMAN v. JUDY LYNN McMURRAY GOODMAN

**Direct Appeal from the Circuit Court for Davidson County**
**No. 02D-2973    Jack Norman, Jr., Judge by Substitution**

**No. M2004-02781-COA-R3-CV - Filed January 9, 2006**

Appellant Bruce Goodman ("Husband") filed for divorce from Appellee Judy Goodman ("Wife") after twenty-six years of marriage. The parties entered into a permanent parenting plan and subsequently went to trial seeking a property settlement and a decree on spousal support. The trial court awarded each party approximately $1.4 million from the marital estate and also granted Wife $4,000 per month in alimony *in futuro*. Husband appeals the alimony award. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Alfred H. Knight, Mary Arline Evans, and Alan Dale Johnson, Nashville, Tennessee, for the appellant, Bruce R. Goodman.

Rose T. Palermo, Nashville, Tennessee, for the appellee, Judy Lynn McMurray Goodman.

**OPINION**

**Factual Background and Procedural History**

This case involves the break-up of a twenty-six year marriage between Bruce Goodman ("Husband") and Judy Goodman ("Wife"). Husband filed a complaint for divorce on December 20, 2002, citing the grounds of irreconcilable differences and inappropriate marital conduct. Wife denied Husband's allegations of fault and filed a counter-complaint for divorce on the grounds of irreconcilable differences and adultery. The trial court granted Wife a divorce based upon the stipulated grounds of adultery by Husband.

At the time of the divorce, Husband was a physician earning an income of approximately $300,000 per year. Wife was a registered nurse with a potential earning capacity of

approximately $40,000 per year. During the divorce proceedings, the parties agreed upon a division of marital assets, which resulted in the distribution of more than $1.4 million to each party. The court also granted Wife child support in the amount of $25,200 per year pursuant to the parties' permanent parenting plan and awarded alimony *in futuro* in the amount of $4,000 per month until Husband dies or until Wife reaches age 65, dies, or remarries–whichever occurs first.

In determining the award of *in futuro* alimony, the trial judge heard evidence concerning contributions that Wife had made to both the marriage itself as well as to Husband's medical practice, the ability of Wife to be rehabilitated, and the necessary expenses incurred in maintaining the standard of living that Wife had become accustomed to during the marriage. Upon conclusion of the evidence, the trial judge made the following findings in relation to the alimony award:

> The Court has taken into consideration that the parties have been married for twenty-six years; the Husband is a physician with an average annual income of $300,000.00; the Wife is a registered nurse with a potential earning capacity of $40,000.00 annually; the Wife has made contributions directly to the Husband's medical practice, as well as being a mother and homemaker, resulting in the marital estate being accumulated through the joint efforts of the parties; and fault clearly falls on the Husband. Furthermore, the parties have enjoyed a high standard of living and the Wife cannot be rehabilitated to the standard the parties enjoyed during the marriage. For these reasons, the Court finds that this case, which is very similar to [*Bratton v. Bratton*], is a case for an award of spousal support on a protracted basis. Accordingly, the Husband shall be, and he hereby is, required to pay to the Wife the sum of $4,000.00 per month as alimony *in futuro* taxable as income to Wife until the Husband's death, the Wife's death or remarriage or until she reaches age sixty-five, whichever event occurs first.

Husband subsequently filed a Motion to Alter or Amend with the trial court arguing, among other things, that the trial court erred in awarding Wife alimony *in futuro* due to Wife's earning capacity as well as the value and liquidity of the marital assets awarded to Wife in the divorce decree. Husband further asserted that the trial court erred in relying on the holding in *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004), for the proposition that alimony *in futuro* was appropriate in this case. In hearing this matter, the trial judge rejected Husband's argument and stated:

> I don't think that the Court relied upon the . . . [*Bratton*] case, as [Husband's counsel has] stated . . . in making my decision. And I outlined the reasons that I felt that the alimony award was justified.
> And then I said, for these reasons, the Court finds that this case is very similar to the [*Bratton*] case. And that is the only reference I made to the [*Bratton*] case.
> I set out that I took into consideration that this was a long-term marriage, a marriage of 26 years. I set out the disparity of income earning ability. That

[Husband] had the ability to earn approximately $300,000 a year in income, and that, hopefully, [Wife] would have the ability to earn $40,000 when she had completed her nursing studies.

I took into consideration her contribution to the marriage as a housewife, as a homemaker, and as an employee at [Husband's] medical practice. I took into consideration the degree of fault, which I don't think there is any question about that.

I took into consideration the standard of living that these parties had enjoyed during their marriage. And for that reason, I felt that this was a case that justified an award for long-term alimony.

The reason that I did that is because I tried to take into consideration the future of both of these parties. And I tried to reach a decision that would enable both of these parties to enjoy a standard of living that was somewhat even, that each would enjoy–have assets to enjoy the same standard of living.

. . . .

I think that [Wife] has a right to expect [a] standard of living somewhat commensurate with what she enjoyed during the marriage, if Dr. Goodman has the ability to pay, which he certainly does.

And I also took into consideration in my award, that the award only goes to age 65. That I don't think [Wife] is required to expend her part of the marital estate division to maintain her standard of living. I think she is entitled to rely upon that for old age. And that is why I set the termination of alimony at 65, thinking that after 65, she could begin to encroach upon her assets to give her a security in her older age.

So for all of those reasons, I felt this was a case that justified long-term alimony *in futuro*.

Husband appeals the alimony award.

## Issues Presented

Whether the trial court erred in granting alimony *in futuro* in the amount of $4,000 per month. We affirm.

## Standard of Review

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d) (2005); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court=s factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court=s determinations are based on its assessment of witness credibility, appellate courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court=s conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). We likewise

review the trial court=s application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

We review an award of alimony under an abuse of discretion standard. *Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App. 1996). If a discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App.1999).

**Analysis**

In his brief, Husband argues that the trial court erred in awarding Wife $4,000 per month in alimony *in futuro* because, "[i]nstead of considering [Wife's] economic needs, the [trial court] focused entirely upon equalizing the parties' future incomes and enabling the wife to continue to enjoy the standard of living 'the parties enjoyed during their marriage.'" In conjunction with Wife's economic need, Husband further asserts that the trial court erred in failing to consider Wife's award of $1.4 million of marital property when granting her alimony *in futuro*. For the reasons stated herein, we affirm the trial court.

In determining the appropriateness of an award of alimony, courts must consider the statutory factors set out in Tenn. Code Ann. § 36-5-101(d) (Supp. 2004).[1] This section provides:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> 
> (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> 
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> 
> (iii) The duration of the marriage;
> 
> (iv) The age and mental condition of each party;
> 
> (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

---

[1] Section 36-5-101, as amended effective July 1, 2005, is currently codified at Tenn. Code Ann. § 36-5-121 (2005). However, since the trial court decided this case before the current amendment, we review this matter under the version of the statute in effect at the time of the Final Divorce Decree rendered on August 9, 2004.

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(E) (Supp. 2004).

In applying section 36-5-101(d), Tennessee courts have historically considered the most important factors to be the need of the spouse seeking support and the ability of the other spouse to pay. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). However, in 2003 the Tennessee Legislature revised section 36-5-101 and added the following provisions:

(B) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(C) . . . . To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties. . . .

Tenn. Code Ann. § 36-5-101(d)(1)(B) and (C) (Supp. 2004).

When alimony is appropriate under section 36-5-101, there are four types which trial courts may award: rehabilitative alimony, transitional alimony, alimony *in futuro* and alimony *in*

*solido*. *See* Tenn. Code Ann. § 36-5-101 (Supp. 2004). Rehabilitative alimony is temporary support and maintenance granted in order to allow the disadvantaged spouse "to achieve, with reasonable effort, an earning capacity that will permit [such] spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." Tenn. Code Ann. § 36-5-101(d)(1)(C) (Supp. 2004). Courts may award transitional alimony when it "finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection." Tenn. Code Ann. § 36-5-101(d)(1)(D).

The general assembly has expressly stated a preference for grants of rehabilitative alimony. Tenn. Code. Ann. § 36-5-101(d)(1)(C) (Supp. 2004); *Crabtree v. Crabtree*, 16 S.W.3d, 356, 358 (Tenn. 2000). However, "[w]here there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors . . . the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient." Tenn. Code. Ann. § 36-5-101(d)(1)(C) (Supp. 2004). "There are two forms of 'long term or more open-ended support': alimony *in futuro* and alimony *in solido*." *Burlew*, 40 S.W.3d at 471. Alimony *in futuro* is open-ended support that is generally paid "until the death or remarriage of the recipient except as otherwise provided in [Tenn. Code Ann. § 36-5-101](a)(3)." Tenn. Code Ann. § 36-5-101(d)(1)(C) (Supp. 2004). *See Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999) (citing *McKee v. McKee*, 655 S.W.2d 164, 165 (Tenn. Ct. App. 1983)). "Alimony *in solido* is an award of a definite sum of alimony and 'may be paid in [a lump sum or in] installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded.'" *Burlew*, 40 S.W.3d at 471 (citation omitted).

Considering the facts in the case at bar, we find that the trial court did not abuse its discretion in awarding alimony *in futuro* to Wife in the amount of $4000 per month. Rather, we find the facts in the instant case analogous to those in *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004).[2] In *Bratton*, the husband appealed an alimony *in futuro* award of $10,500.00 per month on the basis that the trial court "looked at the parties' standard of living during the marriage as the primary factor in making the award." *Id.* at 604. In affirming the award, the Tennessee Supreme Court held as follows:

---

[2] Husband cites *Langley v. Langley*, No. 2002-02278-COA-R3-CV, 2003 WL 22989026 (Tenn. Ct. App. Dec. 19, 2002)(*no perm. app. filed*), and *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000), as support for his argument that the trial court erred awarding alimony *in futuro* so to allow Wife to maintain and continue the marital standard of living. However, we note that these cases were decided under the version of Tenn. Code Ann. § 36-5-101(d)(1) existing prior to the 2003 amendments by the Tennessee General Assembly. As previously noted, the 2003 amendments placed a greater importance upon the marital standard of living. *See* Tenn. Code Ann. § 36-5-101(d)(1)(B) and (C) (Supp. 2004).

Contrary to Dr. Bratton's argument that the trial court relied on the parties' standard of living as the primary factor, a review of the trial court's decision reveals that the trial court considered all of the statutory factors and discussed the fact that the most significant factors to be considered were need and ability to pay. The trial court also discussed rehabilitation and the legislature's expressed preference therefore.

The trial court determined that Ms. Bratton was economically disadvantaged due to the fact that she had chosen to forego a career in order to be the homemaker and primary caretaker for the children. . . . On the other hand, Dr. Bratton was a successful orthopedic surgeon with a yearly income in excess of $500,000.00. Dr. Bratton was found to be at fault for the break up of the marriage, admitting that he had been having an affair with a co-worker for whom he had expended large sums of money during their romance. The trial court also noted that the wife could not be rehabilitated to the standard of living which the parties' had enjoyed during the marriage and concluded that considering "all applicable factors," an award of $10,500.00 [per month] would be appropriate.

Because the trial court properly applied the relevant statutory factors, we affirm the trial court's award of alimony.

*Id.* at 605.

Like the trial court in *Bratton*, the trial court in this case appears to have also considered the relevant statutory factors enumerated under Tenn. Code Ann. § 36-5-101(d)(1) in determining the alimony award. Specifically, the record shows that the trial court heard evidence concerning the parties' finances, Wife's share of the marital estate, Wife's contributions to the marriage, and Wife's need for spousal support. Wife testified at trial that she and Husband married in 1978. Wife further stated that she worked as a registered nurse and supported Husband while he completed his medical degree and residency. After Husband's residency, Wife testified that Husband began working as an associate in another doctor's practice while she worked part time and cared for the parties' first child. After Husband began his own practice in 1989, Wife testified that she began assisting Husband with his medical practice–both as an registered nurse and as an office manager, and continued to do so until Husband filed for divorce. Husband later stipulated that Wife was entitled to a divorce on the grounds of adultery committed by Husband. At the time of divorce, tax returns established that Husband had an adjusted gross income of $318,000. Wife had no income, but testified that she would earn approximately $40,000 upon completion of her Masters Degree in Nursing. Wife further stated that her basic living expenses totaled $8,286 per month, which was consistent with the monthly expenses incurred by the parties during the marriage.

At the conclusion of the evidence, the trial court entered a Final Decree of Divorce awarding Wife half of the marital estate and $4,000 per month in alimony *in futuro*. In

supporting the alimony award, the trial court, as previously noted in the facts section of this opinion, made the following findings in accordance with section 36-5-101(d)(1):

> the parties have been married for twenty-six years; [Husband] is a physician with an average annual income of $300,000.00; [Wife] is a registered nurse with a potential earning capacity of $40,000.00 annually; [Wife] has made contributions directly to [Husband's] medical practice, as well as being a mother and homemaker . . . ; and fault clearly falls on [Husband]. Furthermore, the parties have enjoyed a *high standard of living* and [Wife] *cannot be rehabilitated* to the standard the parties enjoyed during the marriage.

(emphasis added). Husband subsequently filed a Motion to Alter or Amend asking the trial court to reconsider the award of alimony *in futuro*. In denying the motion, the trial judge again expressed his reasoning behind the alimony award, stating that:

> I think that [Wife] has a right to expect [a] standard of living somewhat commensurate with what she enjoyed during the marriage, if Dr. Goodman has the ability to pay, which he certainly does.
> And I also took into consideration in my award, that the award only goes to age 65. That I don't think [Wife] is required to expend her part of the marital estate division to maintain her standard of living. I think she is entitled to rely upon that for old age. And that is why I set the termination of alimony at 65, thinking that after 65, she could begin to encroach upon her assets to give her a security in her older age.
> So for all of those reasons, I felt this was a case that justified long-term alimony *in futuro*.

After reviewing the record in this case, we find that the evidence does not preponderate against the factual findings expressed by the trial court in the final divorce decree or at the hearing on the Motion to Alter or Amend. We also find that, as in *Bratton*, the trial court in this case properly applied the relevant statutory factors in determining the alimony award. Specifically, the record explicitly shows that the court considered the relative earning capacities of each party; the obligations, needs and financial resources of each party; the relative educational level and training of each party; the duration of the marriage; the provisions made with regard to marital property; the marital standard of living; the contributions of Wife to the marriage and to Husband's increased earning power; and the relative fault of Husband in causing the divorce. As a result, we affirm the trial court's award of alimony *in futuro*. Costs of this appeal are taxed to Appellant, Bruce Goodman, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-8-