IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 27, 2014 Session

# REBECCA A. DIXON TATUM v. DON BARON TATUM

**Appeal from the Circuit Court for Bradley County**
**No. V12442     Hon. Lawrence H. Puckett, Judge**

**No. E2013-02462-COA-R3-CV-FILED-OCTOBER 28, 2014**

This appeal arises from a divorce action. Following a hearing, the trial court awarded a divorce to both parties on the ground of inappropriate marital conduct. The court also awarded transitional alimony to Wife. Wife appeals the court's finding that she engaged in inappropriate marital conduct, while Husband appeals the court's award of alimony to Wife. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Alan R. Beard, Chattanooga, Tennessee, for the appellant, Rebecca A. Dixon Tatum.

Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Don Baron Tatum.

**OPINION**

**I.  BACKGROUND**

Rebecca A. Dixon Tatum ("Wife") married Don Baron Tatum ("Husband") on May 28, 1988. Three children, Donielle, Caleb, and Andrea, were born of the marriage. Andrea was the only remaining minor at the time of the divorce hearing. After approximately 24 years of marriage, Wife filed a complaint for divorce, alleging that Husband had engaged in inappropriate marital conduct. Wife also raised the alternative grounds of adultery and irreconcilable differences. She requested designation as the primary residential parent of Andrea and attached a proposed parenting plan that awarded Husband 80 days of visitation.

Husband denied wrongdoing and asserted that he was entitled to a divorce based upon Wife's inappropriate marital conduct, namely her physical and mental abuse of him that occurred on June 1, 2012. He also raised the alternative ground of irreconcilable differences and requested designation as the primary residential parent of Andrea. Husband later agreed to a parenting plan that designated Wife as the primary residential parent and provided him with 80 days of visitation.

A hearing was held at which the parties presented exhaustive evidence on issues that are not relevant to this appeal. As relevant to this appeal, Wife, who was 54 years old at the time of the hearing, testified that prior to the marriage, she purchased the home that she and Husband later shared, remodeled, and refinanced. She claimed that during the marriage, she obtained a bachelor's degree in 2003 and a master's degree in 2011. She related that at Husband's request, she accepted student loans while pursuing her bachelor's degree. She explained that her scholarship covered her tuition and books but that she procured the student loans to pay for two surgeries as a result of her diagnosis of ovarian cancer, to pay for travel expenses to and from the school, and to pay for marital debts. She acknowledged that she did not work while pursuing her education but that she began teaching in 2003 and had maintained employment since that time.

Wife testified that after she accepted employment at Polk County High School, Husband, who was employed by Maytag at the time, learned that his pay had been cut. To cover Husband's loss in pay, Wife requested and obtained three supplementary positions at the school that provided stipends. She claimed that she had since obtained a principal's license that would allow her to apply for employment in school administration. She asserted that despite her qualifications, she did not wish to pursue administrative employment because she preferred to teach.

Wife testified that her income for 2012 was $43,469. She identified her affidavit of income and expenses, which reflected a net monthly income of $2,738.98 and monthly expenses of $4,638.62. She acknowledged that her expense statement included a tithe to her church and funds to care for her two adult children, Donielle and Caleb, who were attending college. She conceded that she had not prepared an expense statement that did not include her adult children.

Wife testified that Husband always had a violent temper. She described several occasions in which Husband had physically abused her and the children throughout their 24-year marriage. She claimed that she suspected that Husband had also been having an affair with a woman named Ms. C.. Relative to the June 1 incident, she explained that she had searched Husband's telephone records and found that he had been excessively communicating with Ms. C. for approximately one year. She related that she and the children

confronted Husband regarding his relationship with Ms. C. and that he admitted to having an affair with Ms. C..

Wife testified that when she and the children returned home later that night, she asked Husband to call Ms. C.'s husband, Mr. C., to inform him of the affair. She related that Husband complied and called Mr. C. while she and the children were listening. After he ended the conversation with Mr. C., Husband questioned whether she might have also had an affair. In response, she slapped Husband, who then grabbed her around the throat and slammed her onto the couch. As he was holding her down, he hit her repeatedly. She related that Caleb attempted to separate them, while Donielle and Andrea called 9-1-1. She claimed that Husband was still hitting her when the police arrived. She stated that she went to the hospital the next morning because she was still in pain. She acknowledged that her ribs had not been broken but asserted that she was prescribed medication for the pain.

Donielle, Caleb, and Andrea, confirmed Wife's testimony that on the afternoon of June 1, Wife confronted Husband about his alleged affair with Ms. C.. Donielle and Caleb testified that Husband admitted to the affair, while Andrea testified that Husband refused to respond to Wife's accusations. Donielle, Caleb, and Andrea related that they were also present later that night when Husband called Mr. C.. They claimed that when Husband ended the conversation with Mr. C., he questioned Wife's faithfulness. Caleb and Andrea acknowledged that they observed Wife hit Husband; however, Donielle asserted that she did not see Wife hit Husband. All three claimed that Husband threw Wife onto the couch and hit her several times. Andrea and Donielle stated that they called 9-1-1 to report Husband. Donielle claimed that after the altercation, she observed bruising on Wife's side and red marks on her neck.

Deputy Matthew Landolt with the Bradley County Sheriff's Office testified that he responded to a call at the Tatum residence on June 1, 2012. Upon his arrival, he found that Husband and Wife had sustained minor injuries as a result of a domestic situation. However, he declined to arrest either party because he could not determine the primary aggressor. He related that Husband voluntarily left the residence while he was still present.

Husband, who was 49 years old at the time of the hearing, conceded that he had engaged in inappropriate marital conduct with Ms. C.. He explained that Ms. C. was a family friend that he had reconnected with in October 2011. He denied any physical relationship with Ms. C. but admitted that he had engaged in excessive communication with her to the detriment of his marriage. He asserted that if given the chance, he would have ceased communication with Ms. C. to save his marriage. However, he claimed that he was entitled to a divorce from Wife because of her attitude toward him throughout the marriage and because of the altercation that occurred on June 1. He claimed that she was manipulative and

controlling throughout the marriage and that she refused to coexist with his side of the family. He denied ever physically abusing Wife or the children at any time during the marriage.

Relative to the incident on June 1, Husband testified that Wife physically assaulted him in front of the children. He recalled that she and the children confronted him with evidence that he had been communicating with Ms. C.. He related that when she and the children returned that night, he admitted that his behavior was inappropriate and apologized for the excessive communication with Ms. C.. He claimed that she then accused him of having an affair and told him that he needed to contact Mr. C.. He complied with her demand and called Mr. C.. He asserted that after his conversation with Mr. C., Wife yelled at him and then slapped him twice. He claimed that in response, he grabbed her and slammed her onto the couch. He acknowledged that the couch contained a hard center console and that Wife was likely hurt when her body hit the console. He denied ever hitting her and claimed that when he released her, she kicked him and resumed yelling.

Husband testified that he had obtained his bachelor's degree in 2001 and that he worked as an industrial engineer at Suburban Manufacturing. He related that prior to his employment with Suburban, he had worked for Maytag for approximately 23 years. He stated that Maytag paid for his college education through their reimbursement program and that when he was finally hired at Suburban, his pay increased from approximately $30,000 to $50,000. He related that his current annual income was $51,200, which did not include his approximate $5,000 yearly bonus. He explained that he was not guaranteed a bonus even though he had received a bonus for the past three years. He identified his affidavit of income and expenses, which reflected a net monthly income of $3,173.48. He acknowledged that his net monthly income increased to approximately $3,415 when his yearly bonus was considered. He claimed monthly expenses of $2,905, not including child support or discretionary expenses. He acknowledged that he included an $800 expense for housing even though he currently lived with his mother and stepfather and was not required to pay rent. He stated that he anticipated securing his own residence in the future. He claimed that based upon his income and expense statement, he did not have the present ability to remit alimony to Wife.

Following the presentation of the above evidence, the trial court divided the marital assets and debts and awarded the divorce to both parties, based upon Wife's inappropriate marital conduct regarding her actions on June 1 and Husband's admitted inappropriate marital conduct regarding his excessive communication with Ms. C.. The court found that Wife was guilty of domestic violence as evidenced by her actions on June 1 but that Husband's actions on that day did not rise to the level of domestic violence because he was simply attempting to restrain Wife. The court designated Wife as the primary residential

parent of Andrea and awarded Wife child support at the rate of $546 per month. The court also awarded Wife transitional alimony at the rate of $500 per month for a period of 36 months, beginning on September 1, 2014, when the child reached the age of majority. This timely appeal followed.

## II.  ISSUES

We restate the issue raised on appeal by Wife as follows:

A.  Whether the trial court erred in finding that Wife engaged in inappropriate marital conduct.

Husband also raised issues for our consideration on appeal that we restate as follows:

B.  Whether the trial court erred in awarding transitional alimony to Wife.

C.  Whether Husband is entitled to attorney fees on appeal.

## III.  STANDARD OF REVIEW

On appeal, we review the decision of a trial court sitting without a jury de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

Trial courts have broad discretion in awarding spousal support. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" *Bogan*, 60 S.W.3d at 727 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* at 733. Thus, an appellate court must review a trial court's decision regarding alimony using the deferential abuse of discretion standard. *See Bratton*, 136 S.W.3d at 605. If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). "Consequently, when reviewing . . . an alimony determination, the

appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (citations omitted).

## IV.  DISCUSSION

### A.

Wife argues that the trial court erred in finding that she was guilty of inappropriate marital conduct, namely domestic violence.  She asserts that the record was devoid of any pattern of conduct or series of actions that would support the court's finding and claims that her behavior on June 1 was a single, isolated incident that occurred during the heat of passion.  Husband responds that the trial court did not err in finding that he had sustained his ground for divorce.  He claims that the trial court resolved any conflict in testimony in favor of his credibility and that Wife's claims were simply unsupported.

In Tennessee, grounds for divorce and defenses thereto are statutory.  *Chastain v. Chastain*, 559 S.W.2d 933, 934 (Tenn. 1977).  Tennessee Code Annotated section 36-4-101(1)-(15) provides the grounds for divorce.  The ground at issue in this case is inappropriate marital conduct, which section 36-4-101(11) defines as:

> The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper, which may also be referred to in pleadings as inappropriate marital conduct[.]

Therefore, "inappropriate marital conduct is established when 'either or both of the parties [have] engaged in a course of conduct which (1) caused pain, anguish, or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.'"  *Chaffin v. Ellis*, 211 S.W.3d 264, 289 (Tenn. Ct. App. 2006) (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002)).  Under section 36-4-129(b), the trial court holds the discretion to grant a divorce to the party who was less at fault.  Whether a party should be awarded a divorce on grounds of inappropriate marital conduct is usually determined by a trial court's assessment of witness credibility.  *Chaffin*, 211 S.W.3d at 289.  "In a case where the resolution of the issues depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than [an appellate court] to decide those issues."  *Fann v. Fann*, No. W2000-02431-COA-R3-CV, 2001 WL 394858, at *2 (Tenn. Ct. App. Apr. 18, 2001).

In this case, the court clearly credited Husband's testimony over the testimony presented by Wife and the children. Wife does not deny that she hit Husband without physical provocation or that she berated Husband and accused him of infidelity in front of their children, one of which was still a minor, on at least two separate occasions on June 1. While the conduct complained of occurred over the course of one day, we cannot discount the fact that Wife unnecessarily introduced a level of physical violence into the admittedly heated discussion. According deference to the trial court's assessment of the witnesses' credibility, we hold that there is enough evidence in the record to support the trial court's finding that Wife engaged in inappropriate marital conduct, namely domestic violence.

B.

Husband asserts that the trial court erred in setting his support obligation by failing to consider and properly weigh the pertinent factors. He claims that Wife failed to establish that she was in need of support. Wife responds that the trial court did not err in setting the type, duration, and amount of spousal support.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th ed., as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. Each type addresses a specific need. In this case, the trial court specifically awarded transitional alimony, which may be awarded to assist the disadvantaged spouse in adjusting to the economic consequences of the divorce. Tenn. Code Ann. § 36-5-121(g)(1).

In determining whether to award alimony, the court must first consider whether the spouse seeking alimony is economically disadvantaged. *Perry*, 114 S.W.3d at 467. "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Id.* at 467. In setting the type, duration, and amount of support, courts are guided by the following list of factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342. When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Aaron*, 909 S.W.2d at 410; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). Courts must also take into

-8-

consideration the different roles a spouse may have in a marriage when considering an award of alimony. Tenn. Code Ann. § 36-5-121(c). "There are no hard and fast rules for spousal support decisions, and such determinations require a 'careful balancing' of the relevant factors." *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950, at *3 (Tenn. Ct. App. Dec. 10, 2003) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998)).

In this case, the trial court initially stated that Wife had failed to establish a need for alimony after it redacted her unnecessary expenses. However, the court then retracted its statement and held that it had failed to consider the disparity of income that necessitated an award of spousal support. We agree with the trial court's assessment. Moreover, at least two of the support factors weigh in favor of granting an award to Wife. Wife was clearly capable of maintaining employment, but Husband's employment yielded a higher income. Tenn. Code Ann. § 36-5-121(i)(1). The marriage was also of a long duration, namely 24 years. Tenn. Code Ann. § 36-5-121(i)(3). The remaining factors appear equally weighted or inapplicable. The parties did not enjoy an extravagant lifestyle or possess significant assets, but they relied upon both incomes to maintain the household. Wife's expenses, even after her listed expenses related to Donielle and Caleb were redacted, established that she needed assistance in maintaining the household. Additionally, Husband possessed the ability to pay the amount ordered by the trial court. With these considerations in mind, we conclude that the trial court did not abuse its discretion in awarding transitional alimony to Wife.

C.

Husband asserts that Wife's appeal was frivolous and that he is entitled to damages in the form of attorney fees and costs for having to defend against the appeal. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny Husband's request for attorney fees on appeal.

# V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed one-half to the appellant, Rebecca A. Dixon Tatum, and one-half to the appellee, Don Baron Tatum.

_____
JOHN W. McCLARTY, JUDGE