# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
October 28, 2014 Session

## SHEILA CHRISTINE JONES CALLOWAY v. WILLARD RANDALL CALLOWAY

**Appeal from the Chancery Court for Roane County**
**No. 201348     Frank V. Williams, III, Chancellor**

---

**No. E2014-00558-COA-R3-CV - Filed November 26, 2014**

---

This appeal arises from a divorce. Sheila Christine Jones Calloway ("Wife") sued Willard Randall Calloway ("Husband") for divorce in the Chancery Court for Roane County ("the Trial Court"). The Trial Court granted Wife a divorce on the ground of adultery by Husband. The Trial Court equally divided the parties' marital residence but awarded Husband's one-half interest in the marital residence to Wife as alimony in solido. The Trial Court also awarded Wife alimony in futuro and attorney's fees. Husband appeals. Given the parties' relative earning capabilities and other relevant circumstances of this case, we affirm the Trial Court's award to Wife of Husband's one-half interest in the marital residence as alimony in solido. However, once Wife was awarded Husband's one-half interest in the marital residence, she no longer was financially disadvantaged relative to Husband, and, therefore, the Trial Court erred in awarding Wife alimony in futuro and attorney's fees. We affirm, in part, and, reverse, in part, the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in Part, and, Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Martin W. Cash, Jr., Kingston, Tennessee, for the appellant, Willard Randall Calloway.

Browder G. Williams, Kingston, Tennessee, and, Julie D. Eisenhower, Knoxville, Tennessee, for the appellee, Sheila Christine Jones Calloway.

## OPINION

## Background

Husband and Wife were married in July 1975. Husband and Wife had three children during the marriage, all of whom were adults by the time of the divorce. In March 2013, Wife sued Husband for divorce in the Trial Court. Wife's complaint alleged adultery, inappropriate marital conduct, and irreconcilable differences as grounds against Husband for divorce. Husband filed an answer and counter-complaint for divorce. Husband acknowledged that he had committed adultery and eventually identified his paramour. The parties underwent mediation to no avail. This case was tried in February 2014.

Two witnesses testified at trial: Wife and Husband. Wife, then 58, testified first. Wife, a schoolteacher, began teaching in 1983. Wife had obtained a bachelor's degree, a master's degree, and an Ed.S. during the marriage. Husband's level of education, by contrast, was a high school diploma. Wife testified that she was the primary caretaker of the children during the early years of the marriage. According to Wife, Husband had a drinking problem during the early years of the marriage and frequently was away from home. Husband also committed adultery during this time. Nevertheless, Wife continued in the marriage.

Around 1990, things began to change in the marriage. Husband quit drinking and attended welding inspector school. Husband went to work for GUBMK, his current employer, and the parties began to thrive financially and in other ways. Wife testified: "We worked hard, bought a house, worked on it, raised our children, put them through college, paid for their weddings." Wife's income as a teacher was $54,662 in 2012 and, including her retirement contributions, $59,094.50 in 2013. Husband's income was $113,740 in 2012 and $133,965.34 in 2013.

In 2012, problems began to develop in the marriage. Rumors began to spread of an affair Husband was having with someone at his workplace. Husband and Wife began to grow further apart. The parties engaged in marital counseling. Around this time, Husband opened a separate bank account. Ultimately, Husband moved out of the marital residence and into an apartment.

Wife testified that she had two major surgeries in the year prior to trial for perforated ulcers. Wife's monthly expense showed a shortfall of $317.75 per month. Wife acknowledged at trial that she had a one-fourth interest in a 100-acre farm she had inherited from her mother, which was still in her mother's estate. Wife, however, received rental income from a cell phone tower on the farm of around $200 per month which reduced her

expense shortfall to $117.75 per month. The parties' marital residence was appraised at the fair market value of $410,000 with there being no debt on this property. Wife submitted an exhibit reflecting attorney's fees of $8,625.00.

Husband, 59, testified. Husband testified that in 2010 he began to feel that the parties were growing apart. Husband's personality was more of that of a loner, whereas Wife preferred a lot of company and family around. Husband also testified that Wife began rebuffing his sexual advances. Husband stated that he began having an affair with a co-worker in April 2013. Husband eventually moved in with the paramour. Husband even took a trip to Tunica with his paramour. Regarding his health, Husband testified that he takes medication for cholesterol, prostate problems, anxiety, and arthritis. Husband also suffers from high blood pressure.

Husband requested an even split of all marital property. Regarding his work, Husband stated that his high income depended in large measure on outages which allowed him to work overtime. Husband stated that his one year of earning $183,000, for instance, was a once in a lifetime occurrence, and that his earnings depend heavily on outages. Husband testified that, were he to work an ordinary 40 hour week with no overtime, he would earn approximately two thirds of his 2013 earnings, $133,965.34. In 2013, Husband worked 3,000 hours.

After hearing the proof, the Trial Court made its ruling. The Trial Court granted Wife a divorce on the ground of adultery. The Trial Court divided the marital residence which was valued somewhere between $400,000 and $500,000 equally, but then awarded Husband's one-half share of the marital residence to Wife as alimony in solido. The Trial Court noted Husband's higher income in reaching this decision. Also, Wife desired to remain at the marital residence. The Trial Court stated:

> And I just don't - - I just don't think this is a case where - - where it would be - - I couldn't, in good conscience, allow the husband's misconduct to uproot the wife under these circumstances and send her off to Lord knows where in order to find another place to live, which would then require some additional payment of money out of her income either for rent or for a house payment after having found some other place to go. I'm just not going to do that.

The Trial Court also awarded Wife alimony in futuro until age 65 in the amount of $200 per month. The Trial Court explained: "And that last figure is modifiable, and that's why I'm allowing it. There's enough disparity in these parties' income to want to make sure that going forward that - - that I can exercise some review of that in the future, if necessary

. . . ." The Trial Court also awarded Wife $6,000 in attorney's fees. Overall, Wife received around 77% of the marital estate to Husband's 23% after the alimony in solido award of Husband's interest in their marital residence to Wife. In short, Wife left with somewhere over $400,000 more of the marital estate than did Husband.

In March 2014, the Trial Court entered an order reflecting its ruling. Husband timely appealed.

## **Discussion**

Although not stated exactly as such, Husband raises three issues on appeal: 1) whether the Trial Court erred in awarding Husband's one-half interest in the marital residence to Wife as alimony in solido; 2) whether the Trial Court erred in awarding Wife $200 per month as alimony in futuro until she reaches the age of 65; and, 3) whether the Trial Court erred in awarding Wife $6,000 in attorney's fees.

The issues on appeal concern a Trial Court's decision to award spousal support. Our Supreme Court has discussed awards of spousal support as follows:

> This Court has frequently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See Gonsewski*, 350 S.W.3d at 105; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski*, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id*. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id*. (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). In determining whether the trial court abused its discretion, an appellate court "should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105-06; *see also* Tenn. R. App. P. 13(d) ("[R]eview of findings of fact by the trial court in civil actions shall be de novo upon the record of the

trial court, accompanied by a presumption of the correctness of the finding [s], unless the preponderance of the evidence is otherwise.").

\*\*\*

Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1) (2010 & Supp. 2012). Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony in solido, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. *Id*. at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce. *Id*.

Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Id*. at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id*. Consequently, transitional alimony has been described as a form of short-term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life." *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010).

\*\*\*

Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Gonsewski*, 350 S.W.3d at 109. Not even long-term support is a guarantee that the recipient spouse will be able to maintain the same standard of living enjoyed before the divorce because "two persons living separately incur more expenses than two persons living together." *Gonsewski*, 350 S.W.3d at 108 (quoting

*Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Although the parties' standard of living is a factor courts must consider when making alimony determinations, *see* Tenn. Code Ann. § 36-5-121(i)(9), the economic reality is that the parties' post-divorce assets and incomes often will not permit each spouse to maintain the same standard of living after the divorce that the couple enjoyed during the marriage. *Gonsewski*, 350 S.W.3d at 113. Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 114-16 (Tenn. 2012).

With respect to the award of attorney's fees in divorce cases, our Supreme Court has stated:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (citations omitted).

We refer to a number of statutory factors in determining the nature and amount of alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2014).

We first address whether the Trial Court erred in awarding Husband's one-half interest in the marital residence to Wife as alimony in solido. Incidentally, the parties do not dispute on appeal the roughly equal division of the overall marital estate itself. The Trial

Court took note of Husband's superior earning power relative to wife as well as Wife's desire to remain in the house.

The record reflects that Wife is, in fact, disadvantaged relative to Husband in terms of annual income. Husband has shown an ability to regularly earn in excess of $100,000 per year, whereas Wife earns around $60,000 per year as a schoolteacher. We are aware that Husband's income depends in large measure on outages occurring allowing him to work overtime and that his income fluctuates as a result. Nevertheless, even considering the fluctuations, the evidence is clear that Husband earns much more money than Wife. In order for Wife to preserve some degree of the lifestyle she had come to enjoy, some accommodation was appropriate to reflect her economic disadvantage. We also are cognizant of the some 38 year length of this marriage.

We find that the Trial Court did not err in assigning Husband's one-half interest in the marital residence to Wife as alimony in solido. In reaching this conclusion, we are guided primarily by the relative economic conditions of the parties, not Husband's adultery. The Trial Court's award of alimony in solido is a reasonable one that accords with the evidence. Given the Trial Court's latitude in awarding spousal support, we affirm the Trial Court as to the award of Husband's one-half interest in the marital residence to Wife as alimony in solido.

We next address whether the Trial Court erred in awarding Wife $200 per month as alimony in futuro until she reaches the age of 65. To resolve this issue, we must assess Wife's status once she received the award of alimony in solido. Wife was awarded Husband's interest in the marital residence worth a minimum of $200,000, which means she received at least $400,000 more of the marital estate than Husband. Wife also has her separate property interest in a 100 acre farm, and income from a cell phone tower on the farm. Wife also has a more extensive educational background than Husband. Meanwhile, Husband, age 59 at trial, will be hard-pressed to maintain his economic income advantage relative to Wife as they both near retirement age. Much of Husband's work depends on outages, and he would have to work a large number of overtime hours to match his previous high earnings. Husband would need to work another seven years until age 66 and earn $60,000 more than Wife per year, after taxes, just to equalize the difference with Wife after she received his half of the marital residence. Given Husband's age, it is an illogical result and contrary to the evidence to expect Husband to continue his work pace for another 30 or 20 or even 10 years. If Husband were a younger man with many more working years before him, his greater earning capacity over those many more working years might well make Wife economically disadvantaged compared to Husband even after the award of alimony in solido. Such, however, is not the situation. In short, once Wife received the award of Husband's

one-half interest in the marital residence as alimony in solido, she no longer was economically disadvantaged relative to Husband.

Tennessee has shown an increasing preference for less permanent forms of spousal support than alimony in futuro. Wife argues that, given the nature of the Trial Court's award, the alimony actually could be considered transitional alimony. However, whichever way one categorizes the award, we must look principally to the disadvantaged spouse's need and the obligor's ability to pay. As we have discussed, upon receiving Husband's one-half interest in the marital residence, Wife is no longer economically disadvantaged compared to Husband. There is no valid economic reason to award her additional spousal support. Husband's conduct in this case, unsavory as some may find it, does not erase the economic facts between the parties. We reverse the Trial Court in its award to Wife of $200 per month until she reaches age 65, irrespective of whether one classifies it as alimony in futuro or transitional alimony.

The final issue we address is whether the Trial Court erred in awarding Wife $6,000 in attorney's fees. Our reasoning on this issue is substantially similar to ours regarding the alimony in futuro award. Once Wife received Husband's interest in the marital residence as alimony in solido, she no longer was economically disadvantaged compared to Husband. Given this record, Wife has the ability to pay her own attorney's fees, and no award of attorney's fees to her as alimony in solido is appropriate. We reverse the Trial Court in its award to Wife of $6,000 in attorney's fees.

In summary, we affirm the Trial Court in its award to Wife of Husband's one-half share of the marital residence as alimony in solido. However, upon receiving that award, Wife no longer was economically disadvantaged compared to Husband. Therefore, we reverse the Trial Court's awards to Wife of alimony in futuro and attorney's fees.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed equally between the parties: one-half to the Appellant, Willard Randall Calloway, and his surety, if any; and, one-half to the Appellee, Sheila Christine Jones Calloway.

_____
D. MICHAEL SWINEY, JUDGE