# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 17, 2016 Session

## PAUL THOMAS JACKSON v. SUSAN DENISE JACKSON

### Appeal from the Chancery Court for Crockett County
### No. 9813     George R. Ellis, Chancellor

---

### No. W2016-00007-COA-R3-CV – Filed November 4, 2016

---

In this divorce action, the trial court granted the wife a divorce, divided the marital assets, and awarded her alimony in solido but denied her request for alimony in futuro. The wife appeals. We reverse and grant a divorce without fault to either party. We also modify the judgment to reflect an award of alimony in futuro in the amount of $2,000 per month.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, J. and DAVID R. FARMER, SPECIAL JUDGE, joined.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellant, Susan Denise Jackson.

James S. Haywood, Jr., Brownsville, Tennessee, for the appellee, Paul Thomas Jackson.

## OPINION

### I.     BACKGROUND

Paul Thomas Jackson ("Husband") and Susan Denise Jackson ("Wife") were married in July 1993. This was Husband's third marriage and Wife's second. No children were born of the marriage; however, each party had children from prior marriages who have since attained the age of majority. Wife maintained employment for the majority of the marriage and was well-educated in music, having received a Bachelor's degree in 1979 and a Master's degree in 1999. Husband completed three years of college and was employed by the Air Force for approximately 20 years prior to the marriage. Thereafter, he operated a photography business.

After approximately 21 years of marriage, Husband filed a complaint for divorce, alleging irreconcilable differences and inappropriate marital conduct as statutory grounds in support of his complaint. Wife filed a counter-complaint for divorce, alleging the same grounds. At the time of the hearing, Husband was 76 years old, while Wife was 57 years old. Husband and Wife (collectively "the Parties") each suffered from various ailments that affected their ability to work.

As pertinent to this appeal, Husband testified that he underwent surgery to treat prostate cancer. He alleged that he was no longer able to engage in sexual activity as a result of the surgery. He conceded that his complication as a result of the surgery affected the marriage and that in October 2012, Wife left the marital residence. He stated that he gave her $3,000 per month for expenses, including rent because she did not have an income at the time. He alleged that she eventually moved back into the marital residence because the rental home was "too little for her."

Husband testified that he operated a food photography business and reported approximately $55,000 in business income for the year 2014, in addition to military disability of $3,356.90 per month, military retirement income of $1,949.13 per month, and social security income of $1,750 per month, for a total of approximately $7,056 per month. He questioned how long he would be physically able to continue his work in the photography business. He stated that he and Wife maintained separate checking accounts throughout the marriage. He agreed that Wife had access to his accounts while he had access to at least one of her accounts. He claimed that he paid the balance on her credit cards once per year. He conceded that he removed approximately $28,000 from one checking account and placed the money into a safe. He explained that he used the account to save money throughout the year to pay taxes. He removed the money when he discovered that Wife was depleting the account. He claimed that she also withdrew large sums of money from other accounts without his permission.

While Wife conceded that Husband never engaged in an extramarital affair and he denied the same, the majority of the testimony presented at the hearing related to his relationship with several women, specifically, Stephanie Raines, Stephanie Rhodes, Paige Knapp, and Helen Conley. Wife claimed that he spent an inordinate amount of time with these women and gifted them with certain items and money. Husband denied that the relationships were inappropriate and explained that his business required his frequent interaction with women, who primarily occupied the field of food photography. He also volunteered his time as a softball pitching coach for Ms. Knapp's daughter and as a photographer for Mrs. Conley's husband.

Husband further explained that he employed Mrs. Rhodes, who often accompanied him on his business trips as part of her employment. He agreed that he paid for their

meals at restaurants while out of town. Relative to Mrs. Conley, he explained that he volunteered to run her husband's business, Tennessee Safari Park, while her husband was incarcerated. [1] He agreed that he spent approximately $1,000 on items for the Park. He also agreed that Mrs. Conley asked him to house an oil painting for her and that she also left various items for him to display on his bookshelf.

Relative to Ms. Knapp, he explained that he attended her daughter's softball games on a regular basis and that he and Ms. Knapp became friends. He agreed that he maintained constant contact with Ms. Knapp from 2006 through 2009 by email or text messages, that he even kept a picture of her on his computer, and that he sent her daughter an iPod that Wife had gifted him. He conceded that Wife moved out of the marital residence after she discovered that he also gave Ms. Knapp $500 in September 2012. He conceded that he filed the complaint for divorce after his attempt at reconciliation proved fruitless. He claimed that Wife attended one counseling session before refusing to participate further. He continued to attend the sessions without her.

Wife testified that Husband's relationship with the various women interfered with their marriage and that she eventually moved out of their shared bedroom into another room in the house because "thing were just really uncomfortable." She stated that she found the email regarding the $500 gift six months later, on September 24, 2012. She recalled leaving the house that night and refusing Husband's and Ms. Knapp's attempts to communicate with her. She stayed with relatives for a few weeks before she returned and agreed to attend counseling. She admitted that she only attended one session but explained that Husband lied to the counselor. She finally moved out of the marital residence in October 2012 after she discovered Husband's continued communications with Ms. Knapp. She asserted that she attempted to reconcile with Husband and met with him on occasion but that she later discovered Mrs. Conley's painting and other items in the marital residence. She noted that Mrs. Conley had also painted a room in the marital residence to match the painting.[2] She recalled that Husband told her the painting was in exchange for his work at the Park.

Wife testified that she first suspected Husband had an inappropriate relationship with Ms. Knapp in 2006 or 2007. She discovered emails and messages between them and confronted Husband, who claimed that his communications were limited to issues pertaining to his volunteer coaching. She asserted that upon further discovery, she found that he referred to Ms. Knapp as "sweet pea" and signed his emails "ILY", meaning "I

---

[1] Ms. Conley denied having an inappropriate relationship with Husband and confirmed that he simply offered his photography skills as a favor to her husband. She conceded that she also asked him to house an oil painting until such time as she could gift the painting to her son.

[2] Husband claimed that Wife painted the room when she redecorated the marital residence.

love you." She also discovered a picture of her on his computer. She stated that after she confronted him again, he agreed that he had probably become too familiar with Ms. Knapp and promised that he would "back off with his relationship with her." She claimed that he continued the relationship, despite his promise to do otherwise.

Wife claimed that Husband also continued to contact another one of his assistants, Stephanie Raines, after she no longer worked for him. She asserted that Mrs. Raines eventually ended the relationship after her husband complained. She claimed that Mrs. Raines's husband also told him to cease communication with his wife.

Wife asserted that Husband's relationship with Mrs. Conley began in May 2009. She stated that he accompanied Mrs. Conley to the prison to visit her husband on a weekly basis.

Relative to finances, Wife testified that she could no longer work due to her various ailments, including her diagnosis of fibromyalgia and chronic fatigue. She admitted that she cared for her grandchildren during the day but explained that she slept while they slept and that her son supplied everything needed for their care. She stated that she receives disability income in the amount of $1,586 per month but that she could not access her retirement income until she reached the age of 67.5 years. She claimed that she did not have individual savings because she paid the day-to-day bills out of her salary during the marriage, while Husband saved his income for their eventual retirement. She identified an affidavit of her income and expenses, which reflected expenses of $4,296 per month. Her expense statement did not include her car payment of $450 per month, homeowner's insurance, or real estate taxes.[3] She explained that the insurance and taxes were included in the mortgage payment but that these expenses would become hers if she received the residence and Husband fulfilled the mortgage as requested.

Following the hearing, the court divided the marital property and debt, with Wife receiving $192,406.80 of the net estate and Husband receiving $199,773.31.[4] The court granted Wife a divorce based upon Husband's conduct and awarded her alimony in solido. Specifically, Husband was required to remit payment for her attorney fees in the amount of $11,297.30 and the remainder of the mortgage in the amount of $15,892.86. The court denied her request for alimony in futuro. Wife filed this appeal.

---

[3] Wife was no longer responsible for a monthly car payment as a result of the divorce proceedings.

[4] While not raised as a separate issue on appeal for our consideration, Husband argues that he received $170,893.39 of the estate as evidenced by the court's erroneous consideration of a checking account that had been depleted to pay the parties' 2014 income taxes. Wife responds that he submitted no evidence in support of his assertion and failed to account for an addition $29,308.17 in retirement benefits.

- 4 -

## II.   ISSUES[5]

We consolidate and restate the issues on appeal as follows:

A.   Whether the trial court erred in awarding the divorce to Wife.

B.   Whether the trial court erred in denying alimony in futuro.

C.   Whether either party is entitled to attorney fees on appeal.

## III.   STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness on appeal and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"A trial court's decision to declare parties divorced, rather than granting a divorce to one of the parties, is reviewed under an abuse of discretion standard." *Ward v. Ward*, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *13 (Tenn. Ct. App. June 20, 2013), *perm. app. denied* (Tenn. Oct. 26, 2013). Trial courts also have broad discretion in awarding spousal support. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" *Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). The role of this court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* At 733. An appellate court must review a trial court's decision regarding alimony using the abuse of discretion standard. *See Bratton*, 136 S.W.3d at 605. If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

---

[5] Husband also requests consideration of post-judgment facts as reflected in his motion before this court. We denied the motion prior to oral argument and will not address the issue again on appeal.

## IV.    DISCUSSION

### A.

Husband argues that the court erred in awarding the divorce to Wife when the court later considered her relative fault in the divorce in deciding the issue of alimony. He requests a declaration of divorce without regard to fault pursuant to Tennessee Code Annotated section 36-4-129(b).  Wife responds that neither party requested a divorce without regard to fault and that Husband failed to establish that she was at fault.

Tennessee Code Annotated section 36-4-129(b) provides as follows:

> The court *may*, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

(Emphasis added.).  Contrary to Wife's assertion, neither party is required to allege the applicability of section 36-4-129(b) for the court to declare a divorce without regard to fault.  Having reviewed the record, we believe that the court abused its discretion in awarding the divorce to Wife when it later considered her relative fault in making its alimony determination.  Our review of the record confirms that the Parties each played a role in the demise of the marriage, namely Husband's inappropriate relationships and Wife's refusal to engage in any meaningful attempt at reconciliation.  Accordingly, we reverse the court's decision on this issue and grant a divorce without regard to fault.

### B. & C.

Wife argues that the court erred in denying her request for alimony in futuro given her need for support and Husband's ability to pay.  She argues that the court improperly considered her decision to vacate the marital residence as evidence of abandonment.  She provides that Husband's inappropriate conduct for a number of years destroyed the marriage through no fault of her own.  Husband responds that the court did not err in denying her request given the division of marital assets, his numerous physical ailments, and her fault in the divorce.  He also questions her need for support and provides that she "has trouble handling money" and does not make responsible financial decisions.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th ed., as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced.

Alimony is distinct from a property settlement. Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. Each type addresses a specific need. At issue in this case is the trial court's denial of Wife's request for alimony in futuro. Alimony in futuro is a long-term form of spousal support. Tenn. Code Ann. § 36-5-121(f)(1). Alimony in futuro is typically awarded when a spouse is economically disadvantaged, but rehabilitation is not feasible, meaning that the disadvantaged spouse cannot achieve an earning capacity that will allow him or her to maintain an appropriate standard of living. *Id.* This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. *Id.*

In determining whether to award alimony, the court must first consider whether the spouse seeking alimony is economically disadvantaged. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Id.* In setting the type, duration, and amount of support, courts are guided by the following list of factors:

(1)     The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)    The separate assets of each party, both real and personal, tangible and intangible;

(8)    The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)    The standard of living of the parties established during the marriage;

(10)   The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)   The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)   Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). In addition to the factors found in Tennessee Code Annotated section 36-5-121(i), the two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). "There are no hard and fast rules for spousal support decisions, and such determinations require a 'careful balancing' of the relevant factors." *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950, at *3 (Tenn. Ct. App. Dec. 10, 2003) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998)).

Here, the court found that the majority of the factors were equally weighted, with the exception of Husband's age, increased earning capacity, and separate assets. The court found that an award of alimony in solido was appropriate given Wife's demonstrated need. We agree with this finding. However, we also believe that the record also demonstrated her need for long-term spousal support. While we agree that Husband is far more advanced in age, his increased earning capacity in the form of disability and retirement income demonstrated his ability to pay long-term support.

With all of the above considerations in mind, we conclude that the trial court abused its discretion in denying Wife's request for alimony in futuro. We hold that she is entitled to an award in the amount of $2,000 per month until such time as she can access

her retirement benefits at the age of 67.5. Accordingly, we modify the trial court's judgment to reflect an additional award of alimony in futuro in the amount of $2,000 per month. In so concluding, we remind the Parties that awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). In deference to Wife's demonstrated need and exercising our discretion in such matters, we also award Wife attorney fees on appeal.

## V.    CONCLUSION

The judgment of the trial court is reversed as to the award of the divorce to Wife based upon fault of the Husband and as to the denial of Wife's request for alimony in futuro. The parties are hereby granted a divorce without regard to fault, and the Wife is hereby awarded alimony in futuro in the amount of $2,000.00 per month until such time as she can access her retirement benefits or upon a showing of substantial and material change in circumstances by either party. The judgment of the trial court is affirmed in all other aspects. Wife is awarded attorney's fees on appeal. This case is remanded to the trial court to set the amount of the appellate attorney's fees and for such further proceedings as may be necessary. Costs of the appeal are taxed one-half to the appellant, Susan Denise Jackson, and one-half to the appellee, Paul Thomas Jackson.

_____
JOHN W. McCLARTY, JUDGE